Gamble *vs.* Knott & Hollingsworth *et al.*

R. L. GAMBLE, plaintiff in error, *vs.* KNOTT & HOLLINGS-
WORTH *et al.*, defendants in error.

The plaintiff and defendants entered into a parol agreement for the rent of a plantation for one year, and for the purchase of the stock, provisions and agricultural implements thereon, and afterwards reduced their agreement to writing. One of the defendants swore upon the trial that it was the intention of the parties to have inserted in the written agreement that the plaintiff was to use his influence with the negroes on the place to remain there as laborers, but by *"mistake"* it was omitted, without showing *how*, or in *what manner*, or by *whom* the mistake was committed: *Held*, that this was not sufficient averment of a mistake, under the law, to lay the foundation for the introduction of parol evidence to prove that it was part of the agreement that the plaintiff should use his influence with the negroes on the place to remain there as laborers, and that it was error in the Court to admit the evidence as to the injury sustained by the defendants in consequence of the negroes leaving there.

*Held, also*, that although the plaintiff may have represented to the defendants that there was a greater quantity of stock and provisions on the place than they found to be there when they took possession of it, if they made no objections, but proceeded to make a crop with what they found there, and paid part of the rent without any complaint as to the deficiency of corn and other things, it is too late, at the end of the year, for them to insist that they did not get as much as they expected, and for that reason seek to repudiate their contract. They *knew* when they took possession of the place, or might have known by the exercise of ordinary diligence, what was on it, and if there was any material deficiency in anything represented to be on the place, *then* was the time for them to have repudiated the contract if they had desired to do so.

Evidence. Reformation of Contract. Mistake. New Trial. Before Judge Cole. Bibb Superior Court. May Term, 1869.

Gamble sued Knott & Hollingsworth, as drawers, and Hardeman & Sparks, as acceptors, of a draft for $5,000 00, dated the 4th of January, 1867, payable to Gamble's order on the 25th of the following December. They pleaded the general issue, payment in part, and that, by mistake, in drawing the contract, which was the basis of said draft, a main ingredient of it had been omitted, etc., as will hereafter appear.

Plaintiff's counsel read in evidence said draft and said contract and closed. This contract was in substance that Gamble rented Knott & Hollingsworth his plantation, in Terrell county, for one year, from the 5th of January, 1867, and sold them all the stock on said plantation, consisting of plantation tools, wagons, blacksmith's tools, all provisions of all kinds, all the cotton seed on the place, also all the live stock, and everything of a transitory or perishable nature," in consideration of which they paid him $5,000 00 cash, gave him an accepted draft on said acceptors for $5,000 00, due the 1st of April, 1867, and the draft sued on, and agreed to return the plantation at the end of the time in as good order as then, barring wear and tear.

One of the defendants testified that Gamble resided in Augusta, but was at said plantation, and his overseer, Bailey, told witness that Gamble wished to rent out the plantation; he went with Bailey to Gamble, and in their presence Bailey stated what kind and quantity of personal property there was on said plantation, and its probable value, of all which witness took a list; these values footed up $16,680 00; Gamble then offered to take $16,000 00 for the purchase of said personalty and the rent of the plantation for one year; witness and Bailey walked out, and upon returning, witness offered Gamble $15,000 00, but because Gamble wished it all in cash, they did not trade. At this interview witness told Gamble that he, witness, did not wish to trade unless the employees, Gamble's trained servants, who had been his

slaves, would remain on the place, and Gamble agreed to use his influence to get all, except certain reserved ones, to stay. The next day he and Gamble met at Dawson, traveled together to Macon, saw Hollingsworth, and agreed upon $15,000 00, to be paid as stated in said contract. Here again Gamble agreed to use his influence as aforesaid. At Gamble's instance they got a lawyer to write said contract, and signed it. It was the intention of the parties to insert in it said agreement of Gamble to use his influence as aforesaid, but it was omitted by mistake. (There was no pretence that any mention of this matter was made to the attorney.) In a day or two witness returned to take possession; Gamble was then sick, and Gobert, Gamble's brother-in-law, was there also. The negroes would not stay; Gobert appeared to be inducing them to leave, and almost all of them did go away with Gobert.

The witness then stated that said personalty was not all on the plantation, what was there was not worth as much as he had estimated, was not in as good condition, etc., told how he had to get other hands at great expense and loss of time, how these unacclimated hands were very sickly, etc., whereby, instead of making three hundred or three hundred and fifty bales of cotton, they made but eighty-five, and estimated the loss to defendants by reason of these things at $4,000 00. The second draft was paid, and $1,125 00 had been paid on this one before it was sued upon. Witness made no complaint to Gamble of said personalty falling short of the representations, except once, when he met him in Macon; at the end of the year he offered Gamble the mules and stock for said draft, but claimed no deduction on it; this was because he had been advised that he could not at law claim such deduction. The other defendant testified that but for Gamble's promise to use his influence to keep the negroes on the place they would not have made the trade.

In rebuttal, GAMBLE testified that he did not know what was on his plantation, and did not represent its quantity or value, as defendant stated; that Knott examined the mules, the hogs and corn; that at the time of the trade nothing was

said as to what was on the place; that he did use his influence to keep the negroes there, and went so far as to promise personally to guarantee their wages; that Gobert had come there to wait on him when sick, and had been told to induce the negroes to stay, except the reserved ones, which Gobert was to take to Jefferson; that if Gobert did otherwise, it was without Gamble's authority or consent; he was anxious to have them stay, because he was renting for but a year, because of ill health, and intended farming the next year, etc.; that Knott never complained of the personalty being short, except that in Macon he said twenty-four sweeps had been stolen, but did not say when it was done; that at the end of the year Knott claimed no deduction, and in July, 1868, Hollingsworth recognized the debt as due.

Several witnesses testified in what particulars the personal property fell short of the list produced by Knott, and gave their estimate of the difference in money. They also testified as to the failure of the crop, and attributed it mainly to sickness of the hands, because they were unacclimated. In reply, there was testimony to show that the farm was generally badly managed, and that that caused the failure of the crop.

After argument, the Court charged the jury that if one in treaty with another for the sale of property, misrepresents a material fact, stating it to be true, knowing it is false, and the other party trusts to the statement, and acts upon it, it is a positive fraud, for which equity will rescind the contract. Such a fraud may be perpetrated by acts as well as by words, and by any artifices designed to mislead. Whether a party thus misrepresenting a fact knows it to be false or not, is wholly immaterial; when a party thus affirming a fact, believes it to be true, it is not a fraud in fact, but is a fraud in law, and if one innocently, by mistake, misrepresents a fact which is material, and to which the other party trusts, it is a cause for rescinding the contract, because it operates as a surprise upon him. 2d. Chancery will exercise the power of reforming a written contract sparingly and with great caution, and only upon the clearest proof of the intention of the parties,

and of the accident or mistake upon which the jurisdiction is invoked. Chancery will reform a written contract upon proof that the writing does not exhibit the contract as agreed upon by the parties at the time, and that the parts were omitted by mistake, accident, inadvertence or fraud, and under these principles the parties are bound by the agreement as executed, unless it was their intention, when it was drawn, that the representations complained of were a part of the contract, upon the faith of which the trade was made, and that they should form a part of the written agreement, and were left out of it by mistake, accident, inadvertence, or fraud, and that this should be shown, by the clearest proof.

The jury found for the plaintiff only $1,500 00, with interest and costs. He moved for a new trial, upon the grounds that the verdict was contrary to the evidence and law, and especially to the second charge of the Court, and upon the ground that the Court erred in the first charge as aforesaid. The Judge says that charge was given to meet the arguments of counsel on both sides. He refused a new trial, and that is assigned as error.

LYON & DEGRAFFENREID, for plaintiff in error.

WHITTLE & GUSTIN, for defendants in error.

WARNER, J.

This was a case tried on the common law side of the Court. On the trial thereof a written contract between the parties for the rent of the plantation, sale of stock, provisions and agricultural implements, was read in evidence. That written agreement was the best evidence as to what was the contract between the parties; all prior negotiations between them are presumed to have been merged therein, and the result of their parol agreement is presumed to be stated in the written contract, unless there was *fraud* or *mistake* in the execution of it.

When a bill is filed on the equity side of the Court to reform a written contract, on the ground of *mistake*, the

complainant must make such allegations in his bill as will, according to the principles and practice recognized by that Court entitle him to the relief which he seeks, otherwise the bill will be demurrable. The same remark may be made when a party seeks similar relief in a common law Court under our system of practice. The party seeking to reform a written contract in a common law Court, under our mode of practice, must, by his pleadings, made out a *prima facie* case on the record. If the defendants in this case had stated in their plea that the parol agreement in regard to the plaintiff's using his influence with the negroes to remain on the place as laborers was omitted " by mistake " without more, their plea would have been demurrable, they would have been required to allege in their plea *how*, in *what manner*, and by *whom* the mistake was committed, in order to lay the foundation for the introduction of such evidence as would entitle them to have the written contract reformed according to the well established rules and practice of Courts of equity.

The charge as to the jurisdiction of the Court in which the case is tried does not change or dispense with the required evidence necessary to reform a written contract in a Court of equity. There was no point made in the Court below, as shown by the record, on the sufficiency of the pleadings, or as to the admissibility of the evidence under them. The point made here is upon the *sufficiency of the evidence* introduced to lay the foundation for reforming the contract.

The error complained of is, that the Court below, on the statement of one of the defendants, that all that part of the parol agreement which relates to the plaintiff's using his influence with the negroes to remain on the place as laborers, was omitted by mistake to be inserted in the written contract, assumed that the defendants had made a *prima facie* case of mistake which would entitle them to have the written contract reformed, and then allowed the witness to testify as to the injury which the defendants had sustained in consequence of the negroes leaving the place. If the written contract contains the entire agreement of the parties, then the plaintiff was not responsible in any way under his contract for the ne-

groes leaving the place, and the evidence upon that point in the case was inadmissible. The evidence on that point was only admissible on the assumption that the witness who stated that part of the parol agreement was omitted by *mistake,* had by his evidence, made out a *prima facie* case for the reformation of the written contract. In our judgment, the *evidence of mistake* in the written contract, then before the Court, was not sufficient under the law applicable to that class of cases, to make even a *prima facie* case for the reformation of the written contract between the parties. The Court should have required the defendants to have shown *how,* in what manner, and by *whom,* the mistake was committed, whether by the draughtsman, or other person, so as to have laid a legal foundation for the introduction of the other evidence. And this was a question for the Court as to whether a *prima facie* case for reforming the written contract had been made out by *the evidence* as required by law. If a plea containing the same facts only would be demurrable, then a demurrer to the evidence proving the same facts should be sustained by the Court.

Under our Evidence Act, allowing parties to be sworn in their own favor, the Courts should require a pretty clear *prima facie* case to be made in laying the foundation for the reformation of written contracts; otherwise, there are but few written contracts that will stand against alleged mistakes, when the interest of parties require a change or alteration in the terms and stipulations thereof. We think the Court below erred in admitting the evidence as to the injury sustained by the defendants, in consequence of the negroes leaving the place, on the *assumption* that there was sufficient evidence of a mistake in the written contract to lay the foundation for reforming it.

Although the plaintiff may have represented to the defendants that there was a greater quantity of stock and provisions on the place than they found to be there when they took possession of it, yet if they made no objections at that time, but proceeded to make a crop with what they found there, and paid part of the rent without any complaint as to

the deficiency of corn and other things, it would seem that, in the view which a Court of Equity usually takes of such matters, it is too late for the defendants now to insist that they did not get as much as they expected, and for that reason seek to repudiate their contract. They knew when they took possession of the plantation, or might have known by the exercise of ordinary diligence, what was on it, and if there was any material deficiency in anything represented to have been there, *then* was the time for them to have repudiated the contract, if they had desired to do so. From the facts disclosed by the record, they do not exhibit a very strong case, to say the least of it, for equitable relief under the law. Let the judgment of the Court below be reversed, and a new trial be granted.