GEORGE MANSFIELD, plaintiff in error, *vs.* E. BARBER, defendant in error.

For a surety to resist a plain, absolute promissory note, due more than ten months after he signed it, by setting up a parol cotemporaneous agreement, to the effect that he was to remain surety for a few days only, and then be discharged, his plea, alleging that the parol stipulation was left out of the writing by mistake, on his part, and by fraud on the part of the creditor, should specify in what the mistake consisted, and how it came to be committed, and in what the fraud consisted; and. moreover, that the parties, one or both, intended to insert the omitted matter, or have it inserted. If it is apparent, on the face of the plea, that no such intention was entertained, but that the surety simply trusted to the parol promise for his protection, and the precise nature and manner of his mistake are not alleged, the plea will be stricken.

JACKSON, Judge, concurred on special grounds.

Principal and security. Pleadings. Mistake. Fraud. Before Judge HALL. Clayton Superior Court. March Term, 1877.

Reported in the opinion.

JAMES T. SPENCE, for plaintiff in error.

TIGNER & HODNET; P. L. MYNATT, for defendant.

BLECKLEY, Judge.

The promissory note declared upon was as follows: "By the first day of October, 1875, we or either of us promise to pay E. Barber, or order, one hundred and eighty 13-100 dollars, value received; and if not punctually paid, interest at

the rate of two and one-half per cent. per month from date.
December 11, 1874.                    A. A. MORRIS.
                    GEORGE MANSFIELD, Security."

The action was commenced on the 10th of August, 1876, and was by the payee against both of the makers. The principal became bankrupt, and the action proceeded against the surety alone. The latter pleaded on oath, specially, that he signed the note at the plaintiff's request; that the plaintiff said he wanted him on the instrument as security for a few days only, adding that Miss N. A. Morris had agreed to become security, but that he, the plaintiff, could not at that time see her and procure her signature; that he was in a hurry to start upon a trip which would detain him from home some two weeks, and that if defendant would stand on the note until he could return, it was all he wanted. The plea alleged, further, that defendant signed with the distinct understanding that he was to be bound for a few days only, until plaintiff could return, and that he then was to be released; that plaintiff returned in about two weeks, but took no steps to have Miss Morris sign or defendant released; that the writing declared upon does not contain the whole contract, so much of the same as is above set forth having been left out of the instrument by accident and mistake. The plea alleged, further, that the defendant's contract with the plaintiff was, that he was to stand security for a few days; that this condition was left out of the writing by mistake on the part of the defendant, he relying fully on the statements of the plaintiff that the suretyship would last only a few days, until the plaintiff could return; that the stipulations were left out of the writing by fraud on the part of the plaintiff, he being in a great hurry, and pretending that he merely wanted the defendant to stand for a few days, in case death should occur to the principal; that by these fraudulent acts, the plaintiff procured the defendant to sign the note, with the understanding that he, the defendant, was to be discharged in a few days.* The striking of this defense by the court, on the plaintiff's motion, is the error complained of.

What accident happened to prevent all the contract from being reduced to writing is not hinted by the plea. In what the mistake consisted, which resulted in omitting from the writing a part of the contract, is not alleged. Was it a mistake of fact, or a mistake of law? Did the defendant believe erroneously, that the writing contained more than it did contain, so as to make his mistake one of fact; or did he err in estimating the legal operation of the instrument, so as to make his mistake one of law? 21 *Ga.*, 118. The writing is very brief and very explicit. It would be difficult to misunderstand it, and no misunderstanding of it is alleged. The plea does not aver or intimate that the parties, or either of them, intended to insert the omitted matter, or any part of it. On the contrary, from the terms and tenor of the plea, it is plainly inferable that no such intention existed. The parties, doubtless, if the plea is true, did precisely what they intended : that is, they purposely entered into a written contract which was absolute and unconditional, agreeing, at the same time, to qualify and control it by parol stipulations wholly inconsistent with the writing. What the defendant promised, in writing, was to pay money by a time specified, more than ten months in the future. His oral agreement was, never to pay it, or any part of it, but to be a surety on the instrument for a few days only, and then be discharged. According to this agreement, his suretyship was nothing. He was bound for nothing. The note, by its face, was not to mature for more than ten months. If the defendant was to be discharged in a few days, of what avail was his signature, and to what end did he sign? In the face of such an absurdity as his suretyship would be reduced to, by setting up the parol contract, the rule for pleading mistake ought to be held with great strictness. That rule is deducible from 21 *Ga.*, *supra*, and 40 *Ga.*, 199. It requires that the matter and manner of the mistake should be alleged. Here the result or consequence is alleged, but the matter and manner are omitted. In precisely what did the mistake consist? and how did the defendant happen to commit it? To these questions the plea affords no answer.

As to the fraud imputed to the plaintiff, the general sum of it is, that he procured the note, so far as the defendant's signature is concerned, by a parol agreement wholly inconsistent with the face of the instrument, and then failed to comply. There is no express allegation that he misrepresented any fact, or resorted to any artifice. That Miss Morris had agreed to become security, is not denied; that plaintiff was in a hurry, is not denied; that he was going on a trip from home, and actually went, is not denied; nor is it even denied, directly, that the plaintiff's purpose was what he represented or pretended it to be. Insincerity is rather intimated than alleged; and the pleader seems to rely on some general inference of turpitude which the court is expected to draw from all the circumstances taken together, and especially from the ultimate fact, that the plaintiff failed to perform what he had promised. There is, however, an express allegation that the oral stipulations were left out of the writing by fraud on the part of the plaintiff. But this, we think, is made nugatory by the general tenor of the plea, which shows that neither of the parties ever intended these stipulations to become a part of the writing. It is quite manifest that nothing of the sort was contemplated; and that infirmity of the whole case is as disastrous to the theory of fraud as it is to the theory of mistake. An allegation of fraud, any more than an allegation of mistake, cannot be used as a mere cover to bring in an oral agreement, cotemporaneous with the note, and in variance of its terms. We think this forbidden result, is the one really aimed at by this plea. 52 *Ga.*, 149; 53 *Ib.*, 18; 54 *Ib.*, 289; 56 *Ib.*, 31; 49 *Ib.*, 370; 44 *Ib.*, 662; 43 *Ib.*, 190, 333, 423; 41 *Ib.*, 675; 40 *Ib.*, 199; 21 *Ib.*, 118; 57 *Ib.*, 319; 13 *Ib.*, 193, 208, 210; 5 *Ib.*, 373; 52 *Ib.*, 448, 570; 50 *Ib.*, 211; 36 *Ib.*, 454; 3 Phil. Ev. C. & H., p. 1458, *n.* 976.

In argument, the two cases in 30 *Ga.*, 93, 306, were urged upon us as in point. But those cases are not like the present. In them the parol evidence went more to the consideration than to the written promise. The creditor, in each

of them, stipulated concerning something of value, and of that something the surety was to have the benefit. There, the subject matters contracted about comprehended more than the suretyship. Here, the subject matter was the suretyship alone, and the unwritten part of the bargain would entirely nullify that which was written. The real claim is, that out of one and the same transaction arose both an obligation and a release, at the same instant; for a covenant never to sue, is a release (Code, §2861), and a stipulation to discharge, in a few days, from a note which has more than ten months to run, negatives the possibility of a suit to coerce payment. This looks less like a condition repugnant to the main grant, than a main grant repugnant to itself. Perhaps the case in 10 Serg. & Rawle, 290, may be a precedent for overturning a note like the one before us; but if it is, we are not at liberty to follow it, were we inclined, for so construed, it is antagonistic to several decisions of this court above cited.

Cited for plaintiff in error, 28 *Ga.*, 165 ; Code, §3808 ; 43 *Ga.*, 382 ; 10 *Ib.*, 235 ; 17 *Ib.*, 522 ; 25 *Ib.*, 85, 86 ; 30 *Ib.*; 93, 306 ; 8 *Ib.*, 559 ; 16 Wall., 3 ; 4 Cranch, 219 ; 27 *Ga.*, 54. *Per contra*, Code, §§3801 to 3804 ; 33 *Ga.*, 491.

Judgment affirmed.

JACKSON, Judge, concurred as follows :

I concur solely on the ground that the plea set out that the surety was to be released before the note ever was due, and hence flatly contradicted the writing and made it a nullity. If the plea had alleged that the note had fallen due prior to the time at which the security was to be discharged, and another substituted in his stead, and that such was the true contract of the parties, and that it was not carried out by the plaintiff, I should hold that the plea would have been good, and the fraud would have been sufficiently set out in it.