## WEAVER *v.* ROBERSON.

1. Equity will not reform a written contract because of mistake as to the contents of the writing on the part of the complaining party (who was able to read), and fraud of the other party which consists only in making false representations as to such contents, on which the complaining party relied as true because of confidence in the party making them, no fiduciary or confidential relation existing between the parties, and no sufficient excuse appearing why the complaining party did not read the contract.

2. Where a landlord sues out a warrant to dispossess his tenant because of non-payment of rent under a lease contract, and the tenant arrests such proceedings by filing a counter-affidavit and giving the required bond, upon a trial of such case the tenant, upon proper pleadings and proof, can prevent eviction and a recovery of double rent by showing that the landlord was indebted to him at the time of the suing out of the warrant, by reason of damages ensuing from a violation of his cross-obligations under the contract, in an amount equal to the rent due when the warrant was issued; and if such damages exceed the amount of rent due the landlord, the tenant can obtain judgment for such excess.

FEBRUARY 26, 1910.

Equitable petition. Before Judge Martin. Laurens superior court. August 24, 1908.

The defendant in error, as landlord, sued out a dispossessory warrant to evict the plaintiff in error, as his tenant, because of failure to pay the rent provided for in the written contract between the parties, whereby the former rentèd to the latter for three years property in Dublin, Ga., to be used for hotel purposes, and known as the New Dublin Hotel. The plaintiff in error filed her counter-affidavit, denying that she owed any rent, and gave the bond required by law. She filed an equitable petition to enjoin a trial under the proceedings above named, and to the order of the court dismissing the petition on demurrer she excepted. She alleged that the written contract between her and the defendant did not speak the truth of the agreement between them, as a result of mistake on her part and fraud on his part; and she prayed that the writing be reformed so as to speak the truth. She alleged that she had implicit confidence in the defendant, who took advantage of the confidence reposed in him and drew a contract which did not contain all of the stipulations necessary to carry into effect their real understanding and agreement in the matter, though she was told by the defendant that it did contain such stipulations, and she signed it so believing; that she owed no rent, because of overpayments made by her to the defendant and damages sustained by her by reason of his failure to perform his obligations provided for in the lease contract, whereby he was to make certain repairs and additions to the property rented; that by reason of his indebtedness to her she could prevent an eviction under the dispossessory-warrant proceedings, but could not recover in such proceedings the excess owing to her by him over and above the rent due by her to him; nor could she, in such proceedings, have the contract re-

formed to speak the truth. She contends, therefore, that she has a right in equity to have such proceedings enjoined, that she may have the contract reformed and obtain a judgment against the defendant for the amount due by him to her in excess of what she owed him for rent. The written contract between the plaintiff and the defendant, whereby the latter leased to the former the hotel property, was dated August 3, 1907, and provided for a lease of the property for three years beginning October 1, 1907. This contract contained many provisions, among which are the following: "The lessee contracts and agrees to pay rent under this lease to the lessor, his agents, executors, administrators, or assigns, at the rate of two hundred ($200.00) dollars per month, to be paid monthly in advance on the first day of each month, without grace, during the continuation of this lease." "It is understood and agreed between the parties that the lessor shall, as early as practicable, enlarge the hotel, by the addition of a third story, or such other plan as he may adopt, thereby increasing the capacity of the hotel to approximately forty-six (46) rooms above the ground floor." Paragraphs 12 and 13 of the lease contract are in terms as follows: "12. The lessor agrees to repair or replace all broken plastering, paint all wood work in need of paint, kalsomine or whitewash walls in the existing rooms and halls not already papered or in good repair, in conjunction with the other alterations above referred to. The work to be proceeded upon with reasonable promptness and completed as soon as practicable. 13. Upon the completion of the additional rooms and their being equipped by the lessor with usual necessary heavy furniture, consisting of bedsteads, springs, mattresses, pillows, dressers, washstands, with usual crockery ware, chairs, and tables, the lessee agrees to receive said rooms as part and parcel of said hotel, and thereafter to pay, on demand of the lessor, rent for the remainder of the original term of three years at the rate of three hundred and twenty-five dollars monthly in advance, on the first day of each month, without grace, in the manner set forth in paragraph No. 6 above." The petition prayed that the contract "be reformed and amended so that paragraph twelve thereof when reformed and amended will read as follows: The lessor, F. H. Roberson, hereby agrees to repair or replace all broken plastering, paint all wood work in need of paint, kalsomine or whitewash walls in the existing rooms and halls not already pa-

pered or in good repair. Said work to be proceeded upon at once, and completed by Oct. 1st, 1907; provided that if said work is not completed·by·said date, Oct. 1st, 1907, then the lessee, Mrs. Mattie V. Weaver, is to pay the lessor as rent for said hotel only one hundred·and fifty dollars a month until said work is completed." The plaintiff alleged that the real understanding, as above set forth, was omitted·from the contract "by mistake and misplaced confidence on the part of the plaintiff, and· by fraud and deception on the part of the defendant, who personally drew the said contract, and who represented to her before she signed it that it contained all that was necessary to carry into effect their real contract as above stated." She further alleged, that she was not "familiar with the rules for the construction of contracts," and believed, at the time she signed it, that the contract she signed in effect provided that the improvements as stated in paragraph 12 of the contract would be made by October 1, 1907; and that she paid the defendant $200 per month for the rent of the hotel for the months of October, November, and December, 1907, thereby paying to him $50 per month for these three months more than was really due him under the real contract, and as the written contract will exist when reformed. She prayed: "That the defendant F. H. Roberson be required to account to plaintiff for the one hundred and fifty dollars excess paid him by plaintiff as rent for said hotel in October, November, and December, 1907." In an amendment she alleged that the defendant had failed to make the additions increasing the capacity of said hotel to approximately 46 rooms above the ground floor, as provided in the contract; and further: "The profits of said twenty-four additional bedrooms would reasonably amount to two hundred dollars per month, over and above the rent which she agreed to pay for said hotel so enlarged and improved; and by reason of said defendant's failure to add and furnish said additional rooms, your petitioner has lost said reasonable profits of two hundred dollars per month since Nov. 1st, 1907. Thus your petitioner has been damaged in the sum of eighteen hundred dollars to date, and will continue to lose said monthly profits until said hotel is improved and enlarged in the manner prescribed in said paragraph eleven of said lease. These losses of profits and damages your petitioner recoups against the rent which she agreed to pay defendant under said lease, and she prays a judg-

ment against him for the excess. . . These profits were contemplated by both parties to said lease when it was made. They are immediate profits of said contract of lease, and are capable of exact calculation." She further alleged, that "By the failure of said defendant to make said repairs, called for by said paragraph eleven of said lease, said hotel was worth fifty dollars per month less than it would have been with said repairs, . . and by reason of said defendant's failure to make said repairs and additions your petitioner has been damaged in the sum of fifty dollars per month since the 1st day of October 1907, or the sum of five hundred dollars to date. Until said repairs are made, your petitioner will continue to be damaged in the sum of fifty dollars per month. All these damages your petitioner recoups against the rent which she undertook and agreed to pay defendant under said lease. . . Said additions and improvements could have been reasonably and practicably done within three months from the date of said lease, or by November 6th, 1907."

*K. J. Hawkins* and *James K. Hines,* for plaintiff.

*Peyton L. Wade,* for defendant.

HOLDEN, J. (After stating the facts.)

1. The defendant in error sued out a dispossessory warrant against the plaintiff in error as his tenant, to evict her from the premises known as the New Dublin Hotel, on the ground of non-payment of rent due as provided in a written contract of lease between the parties. The plaintiff in error filed a counter-affidavit denying that she owed the rent, and gave the required bond. Thereafter she filed an equitable petition to enjoin a trial under the dispossessory warrant and counter-affidavit. One of the grounds upon which she asks for equitable relief is that the writing does not speak the real contract and should be reformed. The writing provides that the plaintiff agrees to pay the defendant as rent $200 per month on the first day of each month in advance, and further provides that the defendant shall, "as early as practicable, enlarge the hotel" by increasing its capacity to approximately 46 rooms above the ground floor, and shall furnish the rooms added, and, in conjunction with such work, make specified repairs on the property, "the work to be proceeded upon with reasonable promptness and completed as soon as practicable." After this work is completed, it is provided that the lessee shall pay $325 per month rent. The

plaintiff contends that the contract should be reformed so as to read that the work of repairs should be proceeded upon at once and completed by October 1st, 1907, and if not completed by that time, the plaintiff was to pay as rent only $150 per month until the work was completed. She contends that the writing does not speak the real contract, because of mistake on her part and fraud on the part of the defendant in falsely representing to her that the writing contained in effect the contract as agreed upon. Equity will reform a written contract because of a mistake of fact on the part of both parties. Civil Code, §§ 3980, 3981, 3982. In this case, however, the petition, properly construed, does not mean that there was any mutual mistake of fact. It does not allege that there was any mistake on the part of the defendant as to what the writing contained or meant. The petition asks for reformation on the ground of mistake of fact by the plaintiff and fraud by the defendant. There are cases in which equity will reform a written contract because of mistake of fact on the part of one of the parties and fraud on the part of the other. In the case of *Dannelly* v. *Cuthbert Oil Co.*, 131 *Ga.* 694 (63 S. E. 257), it was held: "If a person who was illiterate and could read and understand writing only with difficulty when in his normal condition, and who, by reason of his physical and mental condition resulting from a personal injury and being under the influence of opiates administered to relieve his pain, was unable to read, was, while in such condition, induced by the fraud of the other party to a contract between them to sign a writing as evidencing such contract, but which in fact omitted some of the material terms thereof, he may maintain an equitable petition to have the writing reformed so as to speak the truth of the agreement made." It is not alleged in the petition in the case we are considering that the plaintiff was illiterate, or, at the time of the execution of the contract, unable to read. Mistake on the part of the plaintiff as to the contents or meaning of the contract would not of itself authorize a reformation. Such mistake on her part, coupled with fraud on the part of the other party, might do so under some circumstances. But such fraud must be fraud of which the plaintiff has a right to complain. The right to complain of such fraud does not exist in equity, and no right to the reformation of a written contract exists, where the fraud is such that the complaining party could by reasonable dili-

gence have obtained knowledge of the truth. The Civil Code, § 3983, provides: "In all cases of mistake of fact material to the contract, or other matters affected by it, if the party complaining applies within a reasonable time, equity will relieve." But the doctrine there announced is qualified by the provisions of the succeeding section (3984), declaring: "If the party, by reasonable diligence, could have had knowledge of the truth, equity will not relieve." See also Civil Code, § 3974. In the case of *Stoddard Mfg. Co.* v. *Adams*, 122 *Ga.* 802 (50 S. E. 915), it was held: "In an action upon a contract for the purchase of goods, a plea is demurrable which alleges that the contract contained an item which the defendant did not order; that he signed the contract without reading it, relying on the statement of the plaintiff's agent, in whose veracity and honesty he had confidence on account of a long course of previous dealings, that the contract contained only the items agreed on; that he signed the contract at a time when he was busy; and that it was contained in a booklet covering ten or twelve printed pages." There being in the case in hand no allegation that the plaintiff was unable to read, or was induced to sign the contract by any fraud of defendant other than his representation to her that it contained the contract agreed upon, her failure to read it and being mistaken and misled as to its contents would give her no right in equity to have it reformed. If the plaintiff read the contract, or if it was read to her, but she believed it meant the rent to be paid was to be only $150 per month until the repairs were completed, and the repairs were to be completed by October 1st, and this belief was induced by the false representations of the defendant that such was the meaning of the contract, she would not be entitled to its reformation. The contract plainly provides that the plaintiff was to pay the defendant "rent under this lease . . at the rate of two hundred ($200.00) dollars per month," and that "the lessor shall, as early as practicable, enlarge the hotel" and do certain repair work "in conjunction with the other alterations above referred to. The work to be proceeded upon with reasonable promptness and completed as soon as practicable." Nothing whatever appears in the contract about the work of repairing the hotel being begun or completed within or by any *definite* time. The plaintiff is presumed to be a person of ordinary intelligence, and a person of less than ordinary intelligence would

certainly know that the contract, containing no technical words and. couched in ordinary terms of the English language, did not mean what the plaintiff says she was led to believe it meant. The allegations of the petition did not entitle her to a reformation of the written contract.

2. The plaintiff alleges that the defendant, by reason of his violation of the obligations imposed on him by the contract, has damaged the plaintiff in a sum exceeding the amount due by her to the defendant for rent, a failure to. pay which furnishes the ground upon which the dispossessory warrant was issued; and she asks for.a judgment for such excess. She contends that upon the trial of the dispossessory proceedings she could not obtain a judgment for such excess. She contends, therefore, that in order that all matters arising out of the contract might be adjudicated in one suit, a trial under the dispossessory proceedings should be enjoined, a judgment rendered preventing the defendant from evicting her for the non-payment of rent, and a judgment rendered in her favor for the amount of excess due her by the plaintiff over the amount due by her for rent. In the case of *Hall* v. *Thomas, 42 Ga. 179,* the tenant filed an equitable petition to enjoin a trial under a dispossessory warrant sued out for the non-payment of rent, and alleged that he had been damaged in a sum exceeding the amount claimed, by reason of the failure of the landlord to keep the premises in a tenantable condition; that the landlord was insolvent, and the tenant, on account of his poverty,. was unable to give the bond and security on filing his counter-affidavit required by law to prevent his eviction under the warrant. The tenant offered to deposit the monthly rentals in the hands of a receiver to be appointed by the court. The tenant sought to get judgment for the damages pleaded. The court sustained a demurrer to the petition and dismissed the same. It was held in that case that the demurrer to the petition was properly sustained, for want of equity. In the case of *Huff* v. *Markham, 71 Ga. 555,* "Huff filed a bill against Markham, alleging, in brief, that he had leased a hotel from Markham, who had violated the agreements made in such lease, and had failed to make necessary improvements and repairs, causing an expenditure of large sums by complainant; that the defendant had talked among the guests and others having business relations with complainant, injured his credit and business, and by his wrong

conduct rendered complainant unable to pay the rent as it fell due; that the defendant had sued out a warrant to dispossess him, though on an accounting defendant was in fact largely indebted to him. . . An account and settlement of all matters between the parties, and an injunction to prevent interference with complainant's possession, were prayed." It was held that the court committed no error in dismissing the petition on demurrer. Under the decisions above cited, we do not think the plaintiff is entitled to enjoin a trial under the warrant to dispossess her because the defendant is indebted to her by reason of damages caused her by the failure of the defendant to comply with his part of the lease contract, in excess of the amount of rent claimed. See also *White v. Lawrence, 133 Ga. 528 (66 S. E. 171).* However, it is not expressly stated in the cases above cited whether the tenant can set up his damages against the landlord in the dispossessory proceeding, or can only do so in a separate and independent suit for the same. Where a distress warrant is issued, a tenant may replevy the property distrained "by making oath that the same, or some part thereof, distrained for is not due," and giving the required bond. In such case, the tenant may show that he owes the landlord no rent, by reason of having suffered damage on account of the violation of the lease contract by the landlord. *Guthman v. Castleberry, 48 Ga. 172.* Where a dispossessory warrant is issued against the tenant because of his failure to pay the rent, he may arrest the proceeding and prevent his removal from the premises by filing a counter-affidavit "that the rent claimed is not due." The tenant may in such proceeding recoup and show that he has suffered damages by reason of the violation of the rent contract on the part of the landlord. We quote sections of the Civil Code of 1895, as follows: § 3756. Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract. § 3757. It differs from a set-off in this: The former is confined to the contract on which the plaintiff sues, while the latter includes all mutual debts and liabilities. § 3758. Recoupment lies for overpayments by defendant, or payments by fraud, accident, or mistake." And see *Norton v. Graham, 130 Ga. 391 (60 S. E. 1049); Waring v. Gaskill, 95 Ga. 731 (22 S. E. 659).* The

proceedings by the landlord are begun, and if he prevails on the trial he recovers because of·a violation of the rent contract by the tenant in failing to pay rent thereunder.    The tenant can on the trial show by way of recoupment that the "rent claimed is not due," because of damages due him on account of the violation of the rent contract by the landlord.    The right of the landlord to recover possession of the premises and double rent has its foundation in the fact that the tenant at the time of the issuance of the warrant owed the landlord rent on the lease contract.    The tenant can defend by setting up and showing that the landlord owes him damages equal to or exceeding the rent claimed, by reason of a violation by the landlord of the same contract under which the landlord claims the rent to be due.    The landlord claims the rent is due because the tenant violated the contract in failing to pay the rent when due, and the tenant can set up and show he does not owe it because of damages due him by the landlord for violation of the same contract.

Where the tenant proves such damages and they exceed the amount of rent due, can he, in such proceedings in the superior court, have judgment against the landlord for such excess?  We think that he can.    This is a case in which recoupment can be pleaded; and the act of 1878 (Acts 1878-9, p. 147) provides: "And in all cases where, under the laws of this State, recoupment may be pleaded, if the damages of the defendant shall exceed, in amount, those of the plaintiff, the defendant shall in such cases recover of the plaintiff the amount of such excess."    As this is a case in which recoupment may be pleaded, under the express terms of the act of 1878 (now embodied in the latter part of section 3759 of the Civil Code), if the damages of the defendant shall exceed, in amount, those of the plaintiff, the defendant shall in such case recover of the plaintiff the amount of such excess.    In the case of *Arnold* v. *Carter*, 125 Ga. 319 (54 S. E. 177), Carter sought to enjoin a trial under his affidavit of illegality to the foreclosure of a mortgage on personalty, on the ground that he had counter-claims against Arnold by way of recoupment, amounting to more than the amount claimed by Arnold to be due him.    The court held that the petition should have been dismissed on demurrer.    On page 322, in the opinion it was said: "As recoupment may be pleaded in a proceeding to foreclose a mortgage on per-

sonalty, it necessarily follows, under the provisions of the act of 1878, that if, in such a case, the defendant pleads recoupment and proves that his damages exceed the amount which he owes the plaintiff on the demand secured by the mortgage, the defendant is entitled to a judgment against the plaintiff for the amount of such excess. It follows that Carter could set up, in an affidavit of illegality to the foreclosure of the mortgage in the city court, by way of recoupment, all of his claims coming within the scope of that defense, such as payment, overpayment, etc.; and if they exceeded the amount of the debt secured by the mortgage, he could recover a judgment against Arnold, the mortgagee, for such excess." Where a mortgage on personalty is foreclosed, it is provided by Civil Code, § 2765, that "the mortgagor may file his affidavit of illegality, in which affidavit he may set up and avail himself of any defense which he might have set up, according to law, in an ordinary suit upon the demand secured by the mortgage, and which goes to show that the amount claimed is not due." There is no express provision of law permitting anything else to be set up in the affidavit. In proceedings to dispossess a tenant for the non-payment of rent, the defense which the tenant may set up in his counter-affidavit to arrest the proceeding, namely, "that the amount claimed is not due," is similar to that provided for in the affidavit of illegality on the part of the mortgagor. The foreclosure of a mortgage on personalty is not a proceeding to obtain judgment against the mortgagor, but only to sell specific property; just as an eviction warrant to dispossess a tenant is simply a proceeding to eject the tenant and restore the premises to the personal possession of the landlord. The foreclosure of a mortgage on personalty is a statutory and a summary proceeding. Where a dispossessory warrant is issued against a tenant, and no counter-affidavit is filed by him, the result would be simply to eject the tenant from the premises without the recovery of any judgment or money. If a counter-affidavit is filed by the tenant, it then becomes a proceeding on the part of the landlord to recover the premises and to obtain a judgment for double the amount of the stipulated rent. It has been held (*Pettis* v. *Brewster,* 94 *Ga.* 527 (19 S. E. 755), that the double rent thus recoverable is an "incident to a wrongful holding over." By whatever name the double rent recoverable is called, it can not be recovered unless the tenant owed rent at the time of the issuing

of the warrant, thereby giving the right to issue the dispossessory warrant because of the failure to pay the rent. Upon the trial of the case, in order for the landlord to prevail it would be necessary for him to show that the tenant owed rent when the dispossessory warrant was issued, and it is by showing damages, under a plea of recoupment, that the tenant proves that this rent is not due; and if, under such plea of recoupment, the tenant shows that the landlord is indebted to him for any excess, he should have judgment therefor. Whether the plaintiff could enjoin a trial under the dispossessory proceedings if she could not therein plead recoupment and prevent eviction, or if she could do this but could not obtain judgment for any excess which might be due her, need not be considered. The court committed no error in dismissing the petition on the demurrer thereto.

*Judgment affirmed. All the Justices concur, except*

Evans, P. J., dissenting. A dispossessory warrant for failure to pay rent is a summary proceeding. If the tenancy is admitted, the statute allows but one defense to arrest its progress, and that is a denial that the tenant is in arrears. The recovery of double rent is but an incident of the proceeding, which is in no sense a suit for a money demand. The tenant may show that he has not defaulted in the payment of his rent by evidence that the landlord has endamaged him to the extent of the rent claimed by violating the rental contract, but the tenant can not recover in the dispossessory proceeding any excess of damages over the landlord's rent claim. This is so because the issues which can be made in a summary proceeding have their limitation in the statute which authorizes it. If the landlord seeks to dispossess a tenant for failure to pay rent, and the landlord, by violating the rental contract, has endamaged the tenant in a sum greater than the rent, the tenant may, under the facts of this case, stay the summary proceeding and go into equity to recover his damages. The tenant's right to equitable relief is dependent in part upon his inability to recoup his entire damages in the summary proceeding, where the damages exceed the rent. The summary proceeding can not be converted by the defendant's plea into a proceeding wherein the tenant may obtain affirmative relief. It is for these reasons that I dissent from the judgment of the court.