## BAKER v. PATTON.

An equitable petition alleging that the plaintiff, as a part of the consideration for the sale and conveyance of certain land, received from his vendee a promissory note made by a third person, payable to the vendee, that the vendee agreed to indorse the note so that he, as indorser, would be bound for the payment of the same, but that instead of doing so he took it into his office and indorsed it "without recourse," and handed it to the plaintiff outside of the office, where it was too dark for him to read the indorsement, and that the plaintiff is an uneducated man, with little experience in commercial life and the handling of negotiable instruments, and because of his want of education and experience he did not know the meaning of the words, "without recourse," is demurrable, the plaintiff not being entitled, on the showing made in such petition, to the reformation of the instrument.

JANUARY 11, 1916.

Equitable petition. Before Judge Thomas. Tift superior court. January 9, 1915.

J. D. Patton brought a petition against Charles Jenkins as maker, and George Baker as indorser upon a promissory note, alleging in substance, so far as material to a decision of this case, that Jenkins, was insolvent, owning no property of any character; that Baker, as a part of the consideration for a certain tract of land conveyed by petitioner to Baker, had delivered to petitioner the promissory note made by Jenkins, Baker agreeing at the time to indorse the note sued on "in such manner as to render himself legally liable for its payment as indorser;" that after petitioner and Baker reached an agreement as to the indorsement, Baker took the note into his office for the purpose of indorsing it according to the terms of the agreement, "it being then very late in the afternoon and so dark it was impossible to read without the aid of a light, and presently returned said note to your petitioner with the statement that he had so indorsed it; that at the time of the delivery of the note to petitioner by Baker it was so dark that petitioner was unable to read the indorsement made on said note by said Baker, and he accepted the statement of the latter that he had indorsed the note according to the terms of the contract; "that petitioner took the note without making an inspection of the indorsement, relying entirely on the statement of Baker and reposing confidence in him both as a friend and an honest man, put the instrument in his trunk and kept it there until maturity, and then presented it to Jenkins for payment, and, Jenkins refusing payment, payment was de-

manded of Baker, and it was then that petitioner discovered the true character of the indorsement "without recourse;" that he "is an uneducated man, with little experience in commercial life and the handling of negotiable instruments, and because of his want of education and experience did not know the meaning of the words, 'without recourse,' indorsed on said note by said Baker, and did not know until the maturity of the note that under the indorsement Baker was not liable for its payment in the event of the default of Jenkins, having relied absolutely upon the representation of Baker;" that petitioner would not have consummated the exchange but for the fact that he relied upon the promise of Baker to indorse the note, and the agreement of Baker to indorse the note was the real consideration causing him to part with his property; and that Baker's indorsing the note "without recourse" was a scheme, fraud, and artifice whereby he imposed upon the ignorance of petitioner. He prayed that the indorsement be so reformed as to speak the real terms of the contract actually entered into between him and Baker, and to render Baker liable to petitioner as indorser on the note, and that he have judgment against Jenkins as maker and Baker as indorser. To this petition Baker demurred generally and specially. His demurrer was overruled, and he excepted. The case proceeded to trial which resulted in a verdict against Jenkins and Baker for the amount of the note. Baker's motion for a new trial was overruled, and to this ruling also he excepted.

*C. W. Fulwood* and *L. P. Skeen,* for plaintiff in error.

*R. D. Smith,* contra.

BECK, J. (After stating the foregoing facts.) We are of the opinion that the court erred in overruling the general demurrer to the petition. If the petitioner had alleged that he was illiterate and could not read, and that Baker had made the representation charged to be fraudulent in the petition, a different case would have been presented. But petitioner did not aver that he was illiterate. He went no farther in this direction than to aver that he "is an uneducated man, with little experience in commercial life and the handling of negotiable instruments, and because of his want of education and experience did not know the meaning of the words, 'without recourse.'" There is a wide difference between an allegation that one is illiterate and an allegation to the effect that he is

"an uneducated man." A man might be able to read and write, carry on a business correspondence, understand business transactions, and be bound by all his contracts, and yet be an uneducated man. As all of us know, a very large percentage of successful business men who every day enter into important contracts are uneducated men; and a mere allegation that petitioner was an uneducated man, in a petition like that which we have under consideration, falls far short of an allegation that he is illiterate, and it is unnecessary to quote definitions given by the lexicographers to show this. The mere fact that petitioner was ignorant of the meaning and import of the expression, "without recourse," can not be the ground of affording him relief and reforming the contract. Written contracts of a character so simple as this can not be avoided upon the ground that the parties seeking relief against the contract did not understand the meaning of some of the terms of the instrument. In the case of *Weaver* v. *Roberson,* 134 *Ga.* 149 (67 S. E. 662), it is said: "Equity will not reform a written contract because of mistake as to the contents of the writing on the part of the complaining party (who was able to read), and fraud of the other party which consists only in making false representations as to such contents, on which the complaining party relied as true because of confidence in the party making them, no fiduciary or confidential relation existing between the parties, and no sufficient excuse appearing why the party did not read the contract."

It is unnecessary to point out that petitioner does not rely upon a mutual mistake of a fact, to have the reformation of the writing which is sought. He relies upon fraud of the other party in placing upon the promissory note a different indorsement from that agreed on, and the fact that he did not understand the meaning of the words used in the indorsement. He does not allege a state of facts that would excuse him from reading the indorsement. His allegations upon that subject are vague, and will be construed most strongly against the pleader. His statement in regard thereto is as follows: "Your petitioner shows, that, after he and the said George Baker reached an agreement as to such indorsement, the said George Baker took the note sued on into his office for the purpose of indorsing same according to the terms of the agreement, it being then very late in the afternoon, and so dark that it was impossible to read without the aid of a light, and presently returned

and delivered said note to your petitioner, with the statement that he had so indorsed it; that at the time said note was delivered to your petitioner by George Baker it was so dark that your petitioner was unable to read the indorsement made on said note by George Baker, and he accepted the statement of Baker that he had indorsed the note according to the terms of the contract." There is not the slightest indication in the allegations that it would have required anything more than the slightest diligence to have stepped to the light or to have procured a light sufficient to read the indorsement. There was no emergency causing the plaintiff to neglect the reading of the indorsement on the note. In fact, the petitioner shows the grossest negligence on his part in respect thereto. Under these circumstances, we do not think that petitioner is entitled to the relief sought on the showing made in this petition; and it was, therefore, error for the court to overrule the demurrer thereto.

Inasmuch as we have held that it was error for the court to overrule the demurrer to the petition, what took place subsequently upon the trial was nugatory, and it is unnecessary to pass upon the questions made in the motion for a new trial.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent, and Lumpkin, J., dissenting.*