DOVER *v.* BURNS *et al.*

20

No. 12140. MARCH 11, 1938.
ADHERED TO ON REHEARING, MARCH 26, 1938.

24

*J. C. Edwards* and *H. E. Edwards,* for plaintiff.
*B. Frank Whelchel* and *Bynum & Frankum,* for defendants.
GRICE, Justice. The plaintiff contends that she is entitled to

have reformed the writing of February 6, 1930, which was entered into by her through her attorney in fact, B. F. Scott, and the defendants Burns. First, she insists that it was entered into by the mistake on her part, due to the fraud of the defendants Burns. Fraud is thus defined: "Fraud may be actual or constructive. Actual fraud consists in any kind of artifice by which another is deceived. Constructive fraud consists in any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another. The former implies moral guilt; the latter may be consistent with innocence." Code, § 37-702. "Misrepresentation of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitutes legal fraud." § 37-703. The plaintiff urges that the defendants Burns perpetrated a fraud upon her by having her execute the power of attorney giving her son-in-law, B. F. Scott, the authority to negotiate the adjustment of the misappropriation of the money, they orally representing to her that they were going to pay it personally themselves. It is not alleged how and by what means the defendants Burns defrauded the plaintiff in the execution of this power of attorney, other than oral representations. There was no confidential relationship existing between the plaintiff and the defendants Burns which would entitle her to rely upon their statements to her. So far as this record shows, she had never seen either of the defendants Burns before they talked with her in November about the shortage. Their sister was the wife of the man who, she charged, had taken her money. When she talked with them she knew that they were not looking out for her (the plaintiff's) interests, but for those of Erwin or their sister—all interests adverse to the plaintiff's. The reason for the rule that a party to a confidential or fiduciary relationship may rely upon representations made is that by the very terms or circumstances of the arrangement of dealings between the parties there rests upon the party acting for another the duty of protecting and furthering the interests of the person for whom he is acting, not those of himself or of any one else. The person so placing trust in him by virtue of this confidential relationship is justified by the situation of this interest in believing that the other party will act fairly

and make true representations. The fact that it is alleged that the plaintiff reposed trust and confidence in the defendants Burns does not create a confidential relationship. In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone. This state of facts does not bring the plaintiff within the protection of the Code, § 37-707, with reference to confidential relationships. It is not alleged that the attorney in fact selected was in any way illiterate or uneducated, or in any way unsuited to look out for his mother-in-law's interests, other than the allegation that he "was unlearned in law and in the interpretation and construction of contracts, all of which was fully known to said Henry K. Burns and Hubert M. Burns."

The language of Mr. Justice Beck, in *Baker* v. *Patton,* 144 *Ga.* 502 (87 S. E. 659), is significant here: "He went no farther in this direction than to aver that he 'is an uneducated man, with little experience in commercial life and the handling of negotiable instruments, and because of his want of education and experience did not know the meaning of the words, "without recourse."' There is a wide difference between an allegation that one is illiterate and an allegation to the effect that he is 'an uneducated man.' A man might be able to read and write, carry on a business correspondence, understand business transactions, and be bound by all his contracts, and yet be an uneducated man. As all of us know, a very large percentage of successful business men who every day enter into important contracts are uneducated men; and a mere allegation that petitioner was an uneducated man, in a petition like that which we have under consideration, falls far short of an allegation that he is illiterate, and it is unnecessary to quote definitions given by the lexicographers to show this. The mere fact that petitioner was ignorant of the meaning and import of the expression 'without recourse' can not be the ground of affording him relief and reforming the contract." It is not alleged that there was any collusion between Scott and the defendants Burns. The fair inference from the facts in the petition and the proffered amendment is that the defendants realized that the plaintiff was old, infirm, and incapable of taking care of her interests in the transaction, and suggested that she name her own daughter's husband to represent her. Such could not be the basis of fraud to authorize a court to reform the writing.

As a further act of fraud by the defendants Burns, she alleges that they orally represented falsely and wilfully to the attorney in fact for the plaintiff that the written agreement which they were about to execute, which agreement the defendants had prepared, was an individual undertaking and promise on the part of themselves personally to pay the shortage to the plaintiff, and was one which covered all of the plaintiff's demands, while in truth it was only an agreement by the defendants Burns acting on behalf of Erwin to include only part of her demands. Again, there is no allegation that Scott could not read, or that there was any trick or artifice preventing him from reading or from doing what men do ordinarily in executing contracts. The agreement bears the names of two persons as witnesses, one an ordinary witness, and another a justice of the peace. No reason is shown why, if Scott did not understand the writing, he could not have asked these men or have gotten some one else to advise him of the rights of the plaintiff as set out in the writing. The record fails to disclose any facts showing that the parties were anything except acquaintances to each other, all laymen and in the possession of the usual faculties. No fiduciary relationship is set out. Any disparity in age, mental ability or the like, which may have existed between the plaintiff and the defendants Burns is not to be considered, since the plaintiff delegated to Scott the authority to act for her. The precise question presented here has been decided in such effective terms by this court that we give it verbatim: "Equity will not reform a written contract because of mistake as to the contents of the writing on the part of the complaining party (who was able to read), and fraud of the other party which consists only in making false representations as to such contents, on which the complaining party relied as true because of confidence in the party making them, no fiduciary or confidential relation existing between the parties, and no sufficient excuse appearing why the complaining party did not read the contract." *Weaver* v. *Roberson,* 134 *Ga.* 149 (67 S. E. 662). We hold, therefore, that there is not sufficient allegation of fraud in the original petition or in the amendment offered to reform the writing of February 6, 1930.

■ The plaintiff next contends that this writing should be so reformed as to include the matter alleged to have been represented orally, due to a mutual mistake of the parties in leaving it out of

the agreement entered into of that date. Our Code, § 37-206, provides that "In all cases of a mistake of fact material to the contract or other matter affected by it, if the party complaining applies within a reasonable time, equity will relieve." When we come to mutual mistake as a ground for reformation of a contract, the rule is different as to negligence on the part of the complaining party barring him from reformation. See *Green* v. *Johnson,* 153 *Ga.* 738 (113 S. E. 402), and *Eliopolo* v. *Eicholz,* 161 *Ga.* 823 (131 S. E. 889), in which it was held that lack of diligence of the plaintiff in a suit for reformation on the ground of mistake on the part of both parties does not prevent such relief. But what are the allegations as to mutual mistake? It is alleged that the oral matter creating an individual obligation on the part of the defendants to pay the plaintiff was left out of the writing of February 6, 1930. The most detailed statement of this is taken from paragraph 25 of the original petition, which states that "which was left out of said written agreement by mutual mistake of all parties, including said Henry K. Burns and Hubert M. Burns." This is all. The other allegations simply state that the difference was due to "mutual mistake of all parties." These allegations are but conclusions of the pleader, and do not furnish sufficient facts to obtain a reformation on the ground of mutual mistake. Mr. Justice Warner in *Gamble* v. *Knott,* 40 *Ga.* 199, stated the rule which has been followed consistently down to date: "If the defendants in this case had stated in their plea that the parol agreement in regard to the plaintiff's using his influence with the negroes to remain on the place as laborers was omitted 'by mistake,' without more, their plea would have been demurrable; they would have been required to allege in their plea *how,* in *what manner,* and by *whom* the mistake was committed, in order to lay the foundation for the introduction of such evidence as would entitle them to have the written contract reformed according to the well established rules and practice of courts of equity." See also *Mansfield* v. *Barber,* 59 *Ga.* 851; *Osborn* v. *Elder,* 65 *Ga.* 360; *Delaware Insurance Co.* v. *Pennsylvania Fire Insurance Co.,* 126 *Ga.* 380 (2, 3) (155 S. E. 330, 7 Ann. Cas. 1134). Upon such failure to allege the necessary facts, this court will not reform the writing of February 6, 1930, upon the ground of mutual mistake.

■ Having reached the conclusion that the writing above re-

ferred to can not be so reformed as to include the oral representations alleged to have been made, the rights and duties of the parties must be governed by its contents alone. In the brief of the plaintiff it is contended that this writing created a personal obligation on the part of the defendants Burns, and not one of Erwin acting through them as his agent. Yet in paragraph 26 of the petition, which was not changed by the amendment, it is alleged that "said written agreement as hereinbefore referred to, a copy of which is attached hereto, differs from the recitals referred to in paragraphs 24 and 25 of this petition, in that the promises in said agreement as written recites that said Henry K. Burns and Hubert M. Burns agreed to do the promises herein contained as agents of said W. S. Erwin, but on the contrary all the promises, stipulations, and agreements referred to in either the written or the verbal agreements left out of said written agreement as set forth in paragraphs 24 and 25 was to be the individual undertaking of said Henry K. Burns and Hubert M. Burns." This allegation alone is sufficient for this court to hold that the writing was not the individual undertaking of the defendants Burns. But the Code, § 4-304, provides that "the form in which the agent acts is immaterial; if the principal's name is disclosed, and the agent professes to act for him, it will be held to be the act of the principal." In *Harp* v. *First National Bank of Reynolds,* 173 *Ga.* 768 (3) (161 S. E. 355), this court held: "Where in the body or on the face of the instrument the agency is distinctly specified and the principal indicated, and the contract is substantially in the name of such principal, the latter, and not the agent, will be regarded as the maker of the instrument." Citing authorities. The language of this instrument does not create any individual liability upon the defendants Burns.

■ Having held that the writing above referred to constitutes the entire contract of the parties, and that this writing does not involve any undertaking on the part of the defendants personally, it is not necessary for us to deal with the question of the statute of frauds, or the consideration of any purported promise on the part of them personally. The only thing left in the case, then, is whether the record shows any fact which may amount to imposing a liability on the defendant Mrs. Cleo Erwin, substituted in the place of her husband, W. S. Erwin. Nowhere in the petition

30

is any monetary relief sought against Erwin. It is sought to have him specifically perform his alleged obligation to convey the Erwin home place to the plaintiff. His liability will depend upon whether there was any valid authority given by Erwin to the defendants Burns to make any agreement with the plaintiff, whereby he was to convey property to the plaintiff. All that is alleged is that Erwin, then a sick man, agreed orally that he would go to Florida if the defendants Burns would agree to adjust his shortage with the plaintiff, which they agreed to do. A third party seeking to compel a principal to deed real property alleged to have been acquired by written instrument with the agent must show written authority from the agent empowering him to act. *Byrd* v. *Piha,* 165 *Ga.* 397 (141 S. E. 48), refusing to follow the majority opinion in *Brandon* v. *Pritchett,* 126 *Ga.* 286 (55 S. E. 241, 7 Ann. Cas. 1093). No such authority appears here, so there is no liability on the defendant Erwin. Neither the petition nor the proffered amendment alleges facts sufficient to entitle the plaintiff to the relief sought. Accordingly, there was no error in the court's disallowance of the amendment offered, and in the dismissal of the petition on general demurrer.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Hutcheson, J., who dissent.*