### 33968. ULMER *v.* ULMER.

WORRILL, J. 1. In a dispossessory-warrant proceeding, filed March 7, 1951, the plaintiff sought to recover double rent of $1400 on a certain house for the entire year of 1950 and the months of January and February, 1951, under a written contract which was attached to the pleadings as amended and which, among other agreements, embodied a rental contract. It was alleged that the defendant breached the tenancy on January 31, 1950, in failing to pay the rent due for the month of January, 1950, that notice of the termination of the tenancy was given and possession demanded by the plaintiff, and that such demand was not complied with. The defendant filed a counter-affidavit, which as amended alleged that she was not holding over, and she sought to recoup alleged damage sustained by her as a tenant because of the failure of the plaintiff to make necessary repairs to the premises, in consequence of which she was forced to expend a total of $2289.22 for repairs, $2237.97 being for repairs from June, 1941, through November 1, 1946, and $15.25 on April 5, 1950, and $50 in November, 1950, as shown by an exhibit attached to the counter-affidavit as amended. She admitted in such counter-affidavit as amended that as alleged by the plaintiff she entered into the rental and separation agreement on July 14, 1949, which provided that, in consideration of the payment by him of $1000 to her and other performances by him, all claims against him were canceled, and she was to occupy rent-free the premises until October 1, 1949, from which time she was to pay a monthly rental of $50, payable monthly, on a 60-day rental basis; but alleged that such agreement was invalid because obtained from her by threats and coercion on the part of the plaintiff's attorney. The plaintiff demurred on the grounds that the allegations as to repairs, except as to the amounts of $15.25 and $50, set forth no defense, and that they show on their face that the expense, except as to such items, was incurred prior to the relationship of landlord and tenant between the parties. *Held:*

1. In order to rescind and avoid a contract on the ground of fraud, one must restore or offer to restore promptly, upon discovery of the fraud, whatever fruits of the contract he has received, if they be of any

320

value. Code, § 20-906; *Finch* v. *Hill*, 146 *Ga.* 687 (2) (92 S. E. 63); *Roberts* v. *Southern Ry. Co.*, 73 *Ga. App.* 759, 762 (38 S. E. 2d, 48). No offer to restore having been made by the defendant, the contract must stand and be enforced as written, and under such contract the defendant is foreclosed from asserting the demand for expense of repairs, except as to the items of $15.25 and $50, which accrued prior to the execution of the contract on July 14, 1949, and for the further reason that the relationship of landlord and tenant did not arise until that time. Accordingly, the court did not err in sustaining the ground of general demurrer.

(a) The action of the court in sustaining another ground of general demurrer as to the allegations of expense without excluding the items of $15.25 and $50 from such ruling was harmless, inasmuch as the plaintiff subsequently wrote off such amounts from the total rent adjudged to be due him.

(b) The allegations as to the expense of repairs, except as to the above-mentioned two items, were also subject to the ground of general demurrer that they show on their face that the claim was barred by the statute of limitations. Code, § 3-706.

(c) *Weaver* v. *Roberson*, 134 *Ga.* 149 (67 S. E. 662), cited and relied on by the defendant as authority for avoiding the contract and asserting her claim for expense of repairs, has no application here, because in that case reformation of the contract was sought in order to assert a violation by the landlord of his obligations.

2. The allegations as to damage of $3000 because of the failure of the plaintiff to make repairs, thereby causing the nursing home to incur an unfavorable reputation, were subject to the ground of general demurrer that it was thereby sought to plead an action ex delicto against one ex contractu, neither insolvency nor any other equitable ground being set up as an exception to the general rule. *Cornett* v. *Ault*, 124 *Ga.* 944, 947 (53 S. E. 460); *Potts-Thompson Liquor Co.* v. *Capital City Tobacco Co.*, 137 *Ga.* 648 (74 S. E. 279).

(a) The allegations were also subject to the ground of general demurrer that the alleged damages were too remote and speculative to authorize recovery, no definite data for their ascertainment having been alleged. *Levy, Brother & Co.* v. *Allen*, 53 *Ga. App.* 246, 247 (185 S. E. 369).

3. The allegations as to damage of $1000 because of certain tortious acts of the plaintiff were subject to the ground of general demurrer that it was thereby sought to plead an action ex delicto against one ex contractu.

4. The allegations of the counter-affidavit as amended as to the plaintiff's desertion of the defendant, his wife, in October, 1939, his conduct thereafter, buying the property in question and taking title in his own name instead of jointly with the defendant, failure to make repairs, threats and interferences, and that the separation and rental agreement was obtained by threats and coercion and was therefore invalid, were, for reasons hereinabove stated, subject to the ground of general demurrer that they set forth no defense to the plaintiff's action.

5. Because of the above rulings it is unnecessary to pass upon the special grounds of demurrer.

6. Since by stipulation between the parties the defendant admitted that

she was holding over, that the contract of July 14, 1949, was incorporated in and made a part of a final judgment and decree of the Superior Court of Chatham County, Georgia, on September 13, 1949, that the plaintiff, before instituting the dispossessory-warrant proceeding on March 2, 1951, made a demand for possession of the premises and she refused to comply therewith, and that the rental of $50 per month had not been paid for the years of 1950 and 1951, the court, on motion of the plaintiff, did not err, after sustaining the demurrers, in entering judgment against the defendant and the surety on her bond for $1068.08, representing the accrued and unpaid rental under the contract of July 14, 1949, from January 1, 1950, to November 20, 1951, inclusive, at $50 per month, after deducting $65.25 for expense of repairs as agreed by the plaintiff, and did not err in ordering that a writ of possession issue in favor of the plaintiff.

*Judgment affirmed. Sutton, C.J., and Felton, J., concur.*

DECIDED JUNE 20, 1952.

*Grady L. Dickey, Marvin O'Neal,* for plaintiff in error.
*Ernest J. Haar,* contra.

Dewey H. Ulmer swore out in the Municipal Court of Savannah a dispossessory warrant, which as amended alleged the following: The defendant, Betty Lewis Ulmer, is in possession of the premises at 3105 Bull Street in the City of Savannah, as tenant, the property of the deponent, and that "said tenant fails to pay rent now due on said house and premises, or that the said tenant is holding said house and premises over and beyond the term for which the same was rented to him; that the said owner desires and has demanded possession of said house and premises, and the same has been refused by the said Betty Lewis Ulmer." The said tenant fails to pay the rent now due in the sum of $1400 for the year 1950 and the months of January and February, 1951, at the rate of $50 per month, due and payable under the terms of a rental agreement made and executed between the parties on July 14, 1949, as a part of a general settlement agreement of all obligations between them, a copy of the agreement being attached as Exhibit "A" and made a part of the amended affidavit. This exhibit shows an agreement as follows: "Whereas both parties are now living separate and apart and in a bona fide state of separation, now, therefore, said parties, in consideration of mutual covenants and promises hereinafter expressed, hereby contract and agree, each with the

other, as follows: 1. The party of the second part [Dewey H. Ulmer] agrees to give the party of the first part the sum of One Thousand ($1000) dollars in cash, in addition to the following enumerated considerations, which the party of the first part agrees to accept in full satisfaction and settlement of any and all right that she, the party of the first part, might have to alimony, past, present and future, both temporary and permanent, against the said party of the second part. Said money and other considerations hereinafter enumerated shall likewise be in full settlement, satisfaction and in bar of any and all claims that the said party of the first part might have for year's support or dower or as an heir at law or otherwise against the estate of said husband at and after his death. 2. The party of the second part agrees to assume the payment and obligations of the balance due on that certain promissory note payable to the Citizens & Southern National Bank on which the party of the first part is maker and the party of the second part is indorser, and to assume payment of the balance due on that certain promissory note with the Morris Plan Bank of Savannah, Georgia, on which the said party of the first part is maker and the party of the second part is indorser. 3. The said party of the second part hereby agrees that the party of the first part shall have full and complete occupancy and control of the premises located at 3105 Bull Street, Savannah, Georgia, rent free from the date of this agreement to October 1, 1949. Thereafter it was agreed between the parties that the said party of the first part, in consideration of the sum of fifty ($50) dollars, payable monthly as rental, shall continue to reside at the above named premises as a tenant of the said party of the second part on a sixty (60) day rental basis, with the right and privilege of renewal of said agreement every sixty (60) days. At all times the said party of the second part will be the owner of the property." The agreement further provided that the party of the first part shall have the legal custody of their child, John Wesley Ulmer, until he reaches the age of 21 years, that the father shall assist in his support and education, that the parties shall live separate and apart and neither molest or endeavor to compel the other to cohabit or dwell with him or her, and neither thereafter be responsible for any debts created or contracted by the other.

The plaintiff further alleged: The said tenant is holding the said house and premises over and beyond the term for which the same was rented to her, in that she breached her contract of tenancy on January 31, 1950, by failing to pay the plaintiff the rent due for the month of January, 1950, whereupon he then and there notified her orally in person that her tenancy was terminated, and then and there demanded immediate possession of the house and premises, which she then and there and ever since refused to yield.

The defendant filed a counter-affidavit, which was returned to the Superior Court of Chatham County, and which as amended alleged the following: She denied the allegations of the plaintiff's affidavit, except that she is in possession and she so admits. She alleged that her term of rent has not expired, and that she is not holding possession over and beyond her term, and that the rent is not due, and further alleged: "Because of the plaintiff's refusal and failure to make necessary repairs to the premises she was forced to spend the sum of $2289.22 on the house at 3105 Bull Street, Savannah, Georgia, from June, 1941, to November, 1950, as shown in detail in Exhibit "A" attached to the counter-affidavit. (This exhibit was not sent up with the record, but it appears from the orders of the court and pleadings and briefs of counsel that it listed items of expense from June, 1941, through November 1, 1946, and also an item of $15.25 for plumbing expense on April 5, 1950, and an item of $50 for plumbing expense in November, 1950. The reason for so stating the items will hereinafter appear in rulings.) The plaintiff was given notice of the defects and need of repairs to the premises, but failed to take any action whatsoever and made known to the defendant that he did not intend to make any repairs. The repairs were necessary to make the property safe for the purpose for which it was rented and constitute considerably more than the rent which would have been owing to the plaintiff. Because of the failure of the plaintiff to make necessary repairs persons refused to come to the premises which are used by the defendant as a nursing home, and the home gained a general reputation of not being very comfortable, and the defendant's business was damaged in the sum of at least $3000, for which judgment is sought. Because of the following acts of

the plaintiff the defendant's business has suffered and is still suffering the sum of at least $1000 in damages, for which judgment is sought. (Then are listed various tortious acts of the plaintiff, not necessary to be detailed, for reasons hereinafter mentioned.) The defendant admits that she is in possession of the premises as tenant but denies the other allegations of the plaintiff's affidavit. She further alleges: In October, 1939, the plaintiff deserted the defendant and his three minor children, and they were evicted from the house in which they were living on account of inability to pay the rent. She rented the premises at 3105 Bull Street for one year with an option to her to purchase the house at the end of the year. She went to work as a private nurse, and with her small income managed to keep the rest of the family together. The rent was $25 per month, and at the end of the year she decided to purchase for $3000, having made such arrangements that the monthly payments were no more than her rent had been. In the meantime the plaintiff prevailed upon her to let him buy the house for them and promised to take title in the names of himself and her jointly. The plaintiff was allowed to exercise the defendant's option on the property, but he broke his promise and took title in his name only. Shortly thereafter she established a nursing home on the premises. From the time the plaintiff left the defendant and his children in 1939 and they were subsequently evicted from the house where they were staying, the full responsibility of taking care of herself and the children fell on her. The defendant has on many occassions requested the plaintiff to make the necessary repairs to his home but he always refused to do so, and in order to keep the house habitable and to maintain a place for her business and a home for herself and the children she made the repairs herself. A tenancy at sufferance was created in October, 1940, when the plaintiff purchased the house in his own name. Since that time he has never returned to lived regularly with the family. During this tenancy the plaintiff has many times interfered with her quiet and peaceable possession and use and occupancy of the premises by coming there and threatening to evict her, forcing her nurses out in the street, moving her furniture from the house and trying to direct and interfere with the operation of her business. From

December, 1949, to June, 1950, before John Wesley Ulmer, the minor child of the plaintiff and the defendant, obtained employment, he lived with the defendant and she was his sole support, although such responsibility was that of the plaintiff. She alleges that the separation agreement executed on July 14, 1949, as alleged by the plaintiff, is invalid, having been obtained by threats and coercion. The plaintiff threatened through his attorney, to go into bankruptcy if the defendant did not sign it, and the defendant, thinking that the premises she was occupying, and the only means she had of a livelihood, would be taken away from her, and that she would be left without a means of making a living, finally signed it. She would not have signed it had her mind been free from the threats of the plaintiff's attorney and the fear that if she did not accede the plaintiff would go into bankruptcy and in effect "leave her out in the cold."

The plaintiff demurred to the original counter-affidavit and redemurred upon each amendment and added additional grounds of demurrer, all of which were as follows:

1. Generally, to the counter-affidavit as amended, on the ground that, as a whole and including the exhibit attached as Exhibit "A", it shows on its face an attempt by the defendant to recoup or set off damages against the plaintiff while the defendant was holding over beyond the term for which the premises in dispute were rented to her, as shown by the plaintiff's affidavit as amended; and for the further reason that the amendment as a whole, including the said exhibit, shows on its face that the repairs alleged to have been made and the damages resulting therefrom were not incurred during the existence of the relationship of landlord and tenant between the parties, and the amendment as a whole sets forth no legal defense against the plaintiff's affidavit as amended.

2. Generally, to the allegations as to repairs made by the defendant from June, 1941, to November, 1950, in the sum of $2289.22 as per Exhibit "A" attached to the counter-affidavit, and to all of the items listed in the said exhibit, with the exception of item of $15.25 on April 5, 1950, and item of $50 in November, 1950, on the ground that the allegations and exhibit show on their face that the repairs were made by the defendant

prior to the beginning of the term of tenancy; and as to all the items listed in the exhibit except the last two, they show on their face that they constitute no defense against the plaintiff's affidavit as amended and should be stricken.

3. Generally, to the said allegations and the exhibit, as to all of the items therein listed, dated from June, 1941, through November 1, 1946, inclusive, as they show on their face that they are barred by the statute of limitations under the laws of Georgia and constitute no legal defense against the plaintiff's action.

4. Generally, to the allegations as to sustaining damage in the sum of $3000 because of the failure of the plaintiff to make repairs, on the ground that they show on their face an attempt to join an action ex delicto to an action ex contractu, constituting a misjoinder of causes of action, and set forth no legal defense against the plaintiff's affidavit as amended.

5. Generally, to the allegations as to sustaining damage in the sum of $1000 because of enumerated tortious acts of the plaintiff, on the ground that they show on their face an attempt to join an action ex delicto to an action ex contractu, a misjoinder of causes of action, and set forth no legal defense to the plaintiff's affidavit as amended.

6. To the above-stated allegations of the counter-affidavit as to the plaintiff's desertion of the defendant in October, 1939, his conduct thereafter, buying the property in question and taking title in his own name in violation of his promises to take title in the parties jointly, failure to make repairs, threats and interference, and that the separation agreement was obtained by threats and coercion, and was, therefore, invalid, the plaintiff demurred generally on the ground that they set forth no legal defense against his action.

7. Generally, to the allegations of the counter-affidavit as to sustaining damage in the sum of $3000 because of the failure of the plaintiff to make repairs to the house, on the ground that the damages claimed are purely imaginary, speculative, and too remote to form any basis for recovery.

8. Generally, to the allegations of the counter-affidavit as to sustaining damage in the sum of $1000 because of alleged tortious acts of the plaintiff, on the ground that (a) the damages

claimed are purely imaginary, speculative, and too remote to form a basis for recovery; and (b) the allegations show on their face an attempt to join an action ex delicto to an action ex contractu, and to recoup damages for a tort not in any manner connected with the contractual relations of the parties.

The plaintiff also demurred on several special grounds, but it is unnecessary to set them forth in view of the ruling herein made.

The court sustained all grounds of demurrer. Thereafter the parties entered into a stipulation which was approved by the court and ordered filed as a part of the record, and which was as follows: "That the agreement between plaintiff and defendant dated July 14, 1949, a copy of which is attached as Exhibit 'A' to the plaintiff's amended affidavit tendered on September 18, 1951 (filed October 5, 1951) was incorporated in and made a part of a final judgment and decree of the Superior Court of Chatham County, Georgia, dated the 13th day of September, 1949, of file in the office of the clerk of said court and attached hereto as Exhibit 'A.' 2. That prior to filing the the original dispossessory warrant on March 2, 1951, plaintiff made demand upon defendant for possession of the subject premises and same was refused by the defendant. 3. That the monthly rental stipulated in the aforesaid agreement of July 14, 1949, has not been paid for the years 1950 and 1951. 4. That by entering into this stipulation the defendant does not waive her right to file and prosecute exceptions to or appeal from any of the rulings of the trial court on the pleadings in said case or to except to or appeal from any final judgment that may be made in said case in the superior court of said county."

Thereupon the plaintiff moved the court to enter judgment against the defendant and the surety on her bond, Robert F. Brannen, for $1068, as representing the accrued and unpaid rental due under the contract of July 14, 1949, from January 1, 1950, to November 20, 1951, inclusive, at $50 per month, after deducting $65.25 as a proper amount for repairs as conceded by the plaintiff, and also for judgment against the defendant for possession of the premises at 3105 Bull Street, Savannah, Georgia, for the following reasons: 1. Under the rulings of the court on the demurrers to the counter-affidavit as amended and the

stipulation of the parties which was made an order of the court, the only issues remaining in the case are the defendant's plea of setoff of the two items of $15.25 of April 5, 1950, and $50 in November, 1950, and the question as to whether or not the plaintiff is entitled to recover double rent. 2. The plaintiff, for the purpose of the motion, concedes the defendant's claim of setoff of the two above-mentioned items, totaling $65.25, and writes off any claim for double rent, agreeing to an entry of judgment for single rent only, for the year 1950 and the year 1951 up to November 20, 1951, in the sum of $50 per month, or a total sum of $1133.33, less the repairs amounting to $65.25, or a net rental of $1068.08.

The court in an order, reciting the stipulation between the parties and the consent of the plaintiff to the setoff of $65.25 and to waive claim for double rent, rendered judgment as prayed in the motion. The defendant excepted and assigns error as follows:

1. On the judgment sustaining all grounds of the demurrers.

2. On the judgment directing that the plaintiff recover of the defendant $1068.08, as accrued and unpaid rental up to November 20, 1951, less the setoff of $65.25 for repairs, and costs of suit; and in awarding possession of the premises to him.