## MAUCK v. ATLANTA TRUST AND BANKING CO.

1. One who receives promissory notes or other choses in action as collateral security is bound to use ordinary diligence to collect them.
2. Where suit is brought on a promissory note against an accommodation indorser thereon, and the latter defends on the ground that certain accounts were given as collateral security for the payment of the note, and that the proceeds thereof were not applied to the payment of the note, it is incumbent on him to show either that the accounts were collected and the proceeds converted by the plaintiff, or that the failure to collect was due to the negligence of the plaintiff, and that damage resulted to the defendant therefrom. Mere proof that the accounts were valuable and were not collected is not sufficient.

SIMMONS, C. J., dissenting.

Argued January 8, — Decided April 26, 1901.

Complaint. Before Judge Reid. City court of Atlanta. May 24, 1900.

*W. I. Heyward,* for plaintiff in error.
*Dorsey, Brewster & Howell* and *Arthur Heyman,* contra.

COBB, J. The Atlanta Trust and Banking Company brought suit against M. M. Mauck Company, M. M. Mauck, and F. O. Mays, on a promissory note payable to the order of the plaintiff, signed by the M. M. Mauck Company, and indorsed by M. M. Mauck and F. O. Mays. So far as appears from the record, the Mauck Company and Mays filed no defense. Mauck filed a plea, in which he set up that he was an accommodation indorser or surety on the note; that the maker of the same placed in the hands of the plaintiff certain accounts as collateral security; that from these accounts a sufficient amount had been collected to fully pay off the note sued on; and that for this reason the defendant is not indebted to the plaintiff on the note sued on. After evidence introduced by both parties, the court directed the jury to return a verdict for the plaintiff. At the close of the evidence the defendant offered an amendment to his plea, which alleged that "the loss of the accounts placed in the hands of the plaintiff had damaged the defendant in an amount sufficient to have paid the note sued on." The court ruled that, under his view of the evidence, an amendment of the kind offered would not prevent him from directing a verdict. Mauck sued out a bill of exceptions to this court, complaining of the direction of the verdict, and of the court's refusal to allow him to amend his plea and to submit the case to the jury.

. From the evidence it appears that the maker of the note sued on deposited with the plaintiff a list of accounts due to it as collateral security for the payment of the note. It is not entirely clear, but it is inferable from the testimony that these accounts, or at least a sufficient number of them to have made up an amount equal to the amount of the note sued on, were due by solvent persons. The testimony strongly indicates that none of these accounts were ever collected, and the accounts and the list containing the names of the debtors and the amounts due by each was lost. This list seems to have been placed with the plaintiff either at the time or shortly after the note was executed, which was in April, 1896. The question to be decided in the present case is, what were the rights of the respective parties under the facts above detailed?

1. A pawnee should use ordinary diligence in the care of the pawn. Story, Bail. § 332; Schoul. Bail. § 204. Growing out of this rule and really as a part of the same is the doctrine, that the holder of promissory notes and other choses in action pledged as security for a debt is bound to use ordinary diligence to collect the collaterals. Schoul. Bail. (3d ed.) § 236; Colebrook, Col. Sec. § 114; Hanover Bank v. Brown, 53 S. W. 206; Murphy v. Bartsch, 23 Pac. 82. This doctrine has been incorporated in our code. Civil Code, § 2963. See also *Lee* v. *Baldwin*, 10 *Ga.* 208; *Colquitt* v. *Stultz*, 65 *Ga.* 305; *Fisher* v. *Jones Co.*, 108 *Ga.* 490, and authorities cited.

2. In order for a pledgee of such collateral security to be held liable for a failure to collect the same, it must appear not only that such failure was due to negligence, but that it resulted in damage to the pledgor. *Fisher* v. *Jones Co.*, supra. Inasmuch as the law will not in such a case presume either damage to the pledgor or that the pledgee has been guilty of negligence, it is incumbent on the pledgor to establish both by substantive proof. In the *Fisher* case, cited above, it was said: "The principal debtor being entitled to claim a credit by the act of the creditor in converting the collateral, in order to sustain his claim it is incumbent upon him not only to show that the collateral has been converted, but also that he has sustained loss on account of such conversion." See also Murphy v. Bartsch, supra. The same burden rests upon an accommodation indorser who seeks to take advantage of the failure of the holder of the collateral to collect the same. As to this matter he

stands in the shoes of the principal debtor and must carry the same burdens. In addition to showing damage, he must show that this damage was the result of negligence on the part of the pledgee. These principles are well settled, as the following authorities will show.

In Vose *v.* Yulee, 4 Hun, 629, it was held : " Where an indorser of a note is sued upon it, if the plaintiff has received any collateral security for its payment, the burden of proof is on the party sued to show that such collateral security has been improperly disposed of." In Girard Fire Ins. Co. *v.* Marr, 46 Pa. St. 504, 507, it was held, in effect, that it was not a valid defense to an action on a note, that the plaintiffs had exchanged notes given to secure its payment for other notes, and that the latter had not been collected and applied as a credit on the principal note; but that the defendant must go further and show that the exchange was the result of negligence on the part of the plaintiffs, and that the notes received in exchange were not as good as those for which they were taken. In Dugan *v.* Sprague, 2 Ind. 600, it was held that, "If a debtor give his creditor notes as collateral security, he can not obtain credit therefor in a suit upon the principal debt, unless he can show that the notes constituting that security had been, or could have been, collected." The same court in Kiser *v.* Ruddick, 8 Blackf. 382, held that it was not sufficient for the pledgor to show that the collaterals were lost or uncollected, but that the burden was upon him to show that the loss or failure to collect was due to the negligence of the pledgee. In Plants Mfg. Co. *v.* Flavey, 20 Wis. 211, 216, it was ruled that, where notes are transferred as collateral without any special agreement, the law implies an agreement on the part of the assignee to use diligence in the collection of the collaterals, and the burden is on the pledgor to prove loss by reason of the negligence of the pledgee. In the well-considered case of Murphy *v.* Bartsch, supra, it appeared that on October 18, 1886, Murphy delivered to Bartsch his promissory note, due the next day, and as collateral security for its payment transferred a demand he held against one Shaw, payable on November 1, 1886. At the latter date Shaw was solvent, but became insolvent some time in April following. In August, 1887, suit was brought on the note. The defendant interposed the defense that the plaintiff had neglected to collect the claim against Shaw, which by the latter's subsequent in-

solvency became wholly lost to defendant. Judgment was had for the plaintiff, and on appeal this judgment was affirmed. It was ruled that the pledgee must exercise ordinary diligence to collect collaterals; and also that, "When there is no contract as to the disposition to be made of the pledge, and the pledgor claims it is lost by neglect, he must show the neglect, and that damage resulted to him therefrom." We quote the following from the opinion: "In this case it does not appear that the respondent was grossly negligent, nor does it appear there were any particular acts of negligence. It does not appear certainly that he could, if he had tried, have collected the Shaw claim. There may have been good reason why he could not. As he did not, the presumption is that he could not rather than that he would not. There is no actual evidence of his neglect, unless the mere fact that he did not collect it must be so construed." The court then rules that the defendant failed also to show that damage had resulted, even conceding that the plaintiff was negligent in failing to collect the collaterals.

It is a general rule that where the opportunity to collect collaterals is lost by the insolvency of the parties liable on the same, by the negligence of the pledgee, when with ordinary care the same might have been enforced, the pledgee is liable to account for the full loss and damage of the pledgor. Where, however, the pledgee has no reason to believe that the maker of the collateral is embarrassed, and the pledgor has not requested him to take steps to enforce the same, mere delay on the part of the pledgee will not render him liable for a failure to collect. Colebrook, Col. Sec. §§ 114, 115. In Goodall v. Richardson, 14 N. H. 567, it was held that proof that the pledgee delayed five months to collect a collateral which was due and unpaid by a solvent debtor, after which time the debtor became insolvent, was not sufficient evidence to show negligence on the part of the pledgee and relieve the pledgor from the payment of the debt due by him.

Applying the foregoing to the facts of the present case, we think it clear that, even if the amendment to the plaintiff's plea had been allowed and the allegations therein had been established by evidence, he would still have proved no defense to the note. It is contended that the defendant proved enough to cast upon the plaintiff the burden of showing that it had exercised proper diligence to collect the collaterals. What the defendant proved was that valuable ac-

counts were deposited with the plaintiff as collateral security, and that these accounts were not collected. Certainly this is not sufficient to show that the plaintiff negligently failed to collect them, or to put it on proof as to its diligence. The mere failure to collect proves nothing. It does not show that the plaintiff did not make bona fide efforts to collect the accounts. It does not prove that the accounts could have been collected. The persons alleged to owe the accounts might have had a good defense to the same. It may be that the persons liable on these accounts became insolvent after they were assigned to the plaintiff; and if so, mere delay to collect does not show negligent delay. A prudent person may, and often does, grant indulgence to a perfectly solvent debtor. This, without more, would not be negligence. Many things may happen to prevent a perfectly prudent business man from pressing a claim against his debtor; and the mere fact that he has not done so would not convict him of negligence in dealing with the claim. If it be suggested that the plaintiff in the present case had delayed to collect the accounts until they had become barred by the statute of limitations, the reply is that it does not appear from the record whether or not the accounts were in fact barred when the suit was brought, and it was incumbent on the defendant to prove this fact, if it be a fact. It is, therefore, unnecessary for us to decide whether the mere failure to collect a collateral until it became barred by the statute of limitations would be sufficient proof of negligence. Viewing the case as a whole, we are clear that there was no error in directing a verdict for the plaintiff.

*Judgment affirmed. All concurring, except Lewis, J., absent, and*

SIMMONS, C. J., dissenting. Where a bank sues a surety on a promissory note, and it appears from the evidence that the maker of the note placed with the bank good solvent collateral amounting to more than three times the amount of the note; and where the defendant's evidence shows that at the time of the trial the bank has not collected the collateral, but has misplaced or lost it so that it can not be found after diligent search, the negligence of the bank, the loss sustained by the surety, and that the damage resulted from the negligence of the bank are established. It is at least, under the evidence, a question for the jury; and the judge erred in directing a verdict against the surety.