### 5648. GARTRELL *et al. v.* JOHNS.

1. The mere fact that one who receives a promissory note as collateral security is bound to use ordinary diligence to collect it did not authorize the trial judge to direct a verdict for the full amount of the note sued on, where the evidence showed that the note was given solely as collateral security, and that the debt secured thereby had been reduced below the amount of the note. Where the evidence as to the amount due is contradictory, the amount of the judgment is for the jury to determine.
2. The obligation of the surety is accessory to that of his principal; and if the obligation of the principal becomes extinct, that of the surety ceases of course. Civil Code, § 3539. Hence, the balance due by a principal on a contract of suretyship must determine the amount due by the surety thereon. *Norris* v. *Pollard*, 75 *Ga.* 358.

DECIDED FEBRUARY 3, 1915.

Complaint; from city court of Washington—W. A. Slaton, judge pro hac vice. March 6, 1914.

D. C. Gartrell sold a horse to Horton, and, being indebted to E. S. Johns, he caused the note for the purchase-money, amounting to $100, to be made payable to Johns, instead of to himself, and turned it over to Johns, with two others, amounting to $135, as collateral security for his debt. The note for the horse was indorsed by J. L. and B. W. Gartrell. Johns, at the time of receiving these notes, executed a paper in the following terms: "This is to certify that D. C. Gartrell owes E. S. Johns $153.90, and said Johns has notes amounting to $235, and after said E. S. Johns collects the amount and for recording fees, said Johns is to return the balance to F. E. Gartrell after said note is paid E. S. Johns. This March 12, 1907. [Signed] E. S. Johns." Suit on Horton's note for $100 was brought by Johns, and a plea was filed by the indorsers, in which it was alleged, among other things, that D. C. Gartrell's debt to the plaintiff, for which the note indorsed by them was collateral, had been satisfied in full by the collection of $135 in cash on the debt, and the recovery of the horse for which the note sued on was given, the value of the horse being $50 or $75. On the trial it was testified that the two notes for $135 had been paid. The court, at the conclusion of the evidence, directed a

verdict against the defendants for the full amount of the note sued on. The exceptions are to the overruling of their motion for a new trial, based on the grounds that the verdict was contrary to law and to the evidence, and that the court erred in allowing a witness to testify that he levied on the horse under an attachment and sold him to Mr. Johns at public sale, for "just enough to pay the expenses of sale and costs." The other material facts appear in the following opinion.

F. W. *Gilbert,* I. T. *Irvin Jr.,* for plaintiffs in error.
*Colley & Colley,* contra.

RUSSELL, C. J. Under the well-settled principle ruled in *Mauck* v. *Atlanta Trust & Bkg. Co.,* 113 *Ga.* 242 (38 S. E. 845), one who receives promissory notes or other choses in action as collateral security is bound to use ordinary diligence to collect them, and "where an endorser of a note is sued upon it, if the plaintiff has received any collateral security for its payment, the burden of proof is on the party sued, to show that such collateral security has been improperly disposed of." Vose *v.* Yulee, 4 Hun, 629. But we think the court erred in the present case in directing a verdict against the defendant sureties for the full amount of the contract. It is true that there was no proof to show that the collateral security was improperly disposed of, but the error of the court consisted in directing a verdict against the sureties for the full amount of the promissory note, when the sureties had limited their endorsement by an express stipulation, which was not disputed, to an amount which the evidence disclosed to be less than the $100 evidenced by the note in suit. According to the evidence, D. C. Gartrell owed E. S. Johns a certain sum of money. Johns represented to J. L. Gartrell and B. W. Gartrell that this amount was $153.90, and upon his express statement they contracted to secure D. C. Gartrell's indebtedness of $153.90, and expressly limited their obligation of suretyship to that amount. Under the rulings in *Matheson* v. *Jones,* 30 *Ga.* 306 (76 Am. D. 647), and *Underwood* v. *Bass,* 1 *Ga. App.* 623 (57 S. E. 953), the court properly admitted evidence upon the subject, both written and parol; and it was clearly shown that, in becoming sureties, J. L. and B. W. Gartrell did not undertake or promise to pay more than $153.90. The plaintiff himself concedes this to be true, and of course his testimony that he afterwards ascertained that D. C. Gartrell owed him

a larger amount, and his attempt upon that ground to increase the liability of the sureties, is not important; for the contract could not be altered by any mistake which he himself made, nor their contract amplified because he ascertained that D. C. Gartrell did owe him a larger sum than he supposed at the time he contracted with the sureties.

A contract of suretyship is stricti juris. The evidence as to an agreement that any overplus after the payment of the $153.90 should be paid to F. E. Gartrell, personally or as agent for D. C. Gartrell, was entirely irrelevant and immaterial, because there is no evidence that J. L. and B. W. Gartrell were parties to this agreement. There was no evidence that the sureties were interested in the payment of any overplus after the $153.90 was discharged, and certainly no evidence to indicate that they assumed any liability for the payment of the overplus in excess of the $153.90 to F. E. Gartrell, personally or as agent for D. C. Gartrell. The case then stands thus: It was the duty of the plaintiff to collect from the maker of the collateral note, for the benefit of any one who might be concerned, the entire amount of principal and interest due thereon, but the plaintiff was entitled to recover from the sureties only so much as would discharge their limited contract of suretyship and enable him to enjoy the fruits of his contract as originally made. The sureties assumed no liability to secure the collection of the remainder due on the note sued upon, after the debt of D. C. Gartrell, amounting to $153.90, was discharged, and certainly did not undertake to guarantee the collection of the balance should the maker of the note default in payment thereof. The sureties were induced to sign this note, which had been previously executed, by the statement that their liability would be confined to $153.90. And, from the statements made, it was apparently anticipated that the other notes, amounting to $135, would be easily collected, because it was uncontradicted that the plaintiff stated to each of the sureties that when the notes for $135 were paid, they would only have to pay $15 or $20 on the note here involved. It is not contradicted that the plaintiff has received $135 from the other notes, thereby leaving a balance of $18.90 as principal upon the original obligation of the sureties. Under the express statements made by the plaintiff to induce the sureties to endorse the note, they were never at any time liable for $100 upon

the note signed by Horton, if the other two notes, also given as collateral, were paid. The notes amounting to $135 having been paid, the liability of the sureties, under the contract, was only $18.90 upon the note sued on. Under the explanation afforded by the parol evidence, the endorsement of these sureties amounted to nothing more, in the event the $135 was paid, than an endorsement for $18.90. In this view of the matter the court, under the undisputed evidence, might have safely directed a verdict in favor of the plaintiff against the principal defendant, Horton, for the full amount of the note, and against the sureties for $18.90, with interest, but erred in directing the verdict to which exception is taken.    *Judgment reversed. Broy'es, J., not presiding.*