## 29450. W. T. RAWLEIGH COMPANY *v.* OLIVER.

DECIDED JULY 30, 1942.

*Overstreet & Reddick, William Brunson,* for plaintiff.

*John C. Hollingsworth, O. Frank Brant,* for defendant.

STEPHENS, P. J. W. T. Rawleigh Company filed suit against D. E. Evans, J. B. Hodges, E. L. Oliver, and J. M. Cleland, in which it alleged that on January 2, 1937, the defendants entered into a written agreement with the plaintiff whereby they jointly and severally promised and agreed to pay for all goods and merchandise sold and delivered to Joe McCosh, as shown by the books of the plaintiff to be due; that on July 1, 1937, McCosh signed an account stated admitting that he was due the plaintiff $969.57, on which he had paid $239.43, leaving a balance due of $730.14 principal; that McCosh is a non-resident of Georgia and that the named defendants and each of them are jointly and severally indebted to the plaintiff in the sum of $730.14 principal besides interest. Attached to the petition as a part thereof is the agreement sued on which reads in part as follows: "For and in consideration of the W. T. Rawleigh Company accepting the above contract, and/or in consideration of the above-named seller extending further credit to the said buyer, and having read and acquainted ourselves with the nature, terms, and conditions of this and the above agreement between the buyer and seller, we, the undersigned, do hereby jointly and severally enter ourselves as sureties, and not as guarantors, and unconditionally promise, guarantee, and agree to pay said seller for any and all goods, wares, and merchandise sold said buyer under the above and foregoing contract, hereby expressly consenting and agreeing to all the terms, conditions, and provisions thereof; and we also specifically promise and agree to assume and pay any and all prior indebtedness that may be due and owing said seller on the date of the acceptance of this contract, for any and all goods, wares, and merchandise previously sold to said buyer under and by

virtue of any and all prior contracts or agreements; hereby binding our heirs, executors, administrators, or assigns. It is mutually agreed that this contract is conclusive and binding upon the party or parties who sign it, whether it is signed by any other party or parties or not, and that any statement or representations made to any of the undersigned sureties by any person or persons either as to who or how many parties will sign this surety agreement or as to any other matters not fully expressed herein shall not affect the rights of the seller. It is further understood that there are no conditions or limitations to this undertaking except those written or printed herein at the time of signing hereof, and that after execution no alteration, change, or modification shall be made except as provided for in the terms of the foregoing contract between the buyer and seller, and that any notice in any way affecting the rights of the seller must be delivered by registered mail to the seller at its office at Memphis, Tennessee."

Oliver filed an answer in which he admitted the execution of the above agreement, but denied that he was indebted to the plaintiff thereon. For further plea and answer this defendant alleged that on January 2, 1937, McCosh came to his home with a paper which he requested the defendant to sign, and explained that he was representing the plaintiff as agent in Screven County at that time, and it was necessary for him to have four men of that county to recommend him for another year in order that he could go on with this company; that he assured the defendant that there was no liability of any kind "entailed in the signing of the recommendation;" that this defendant thereupon informed McCosh that he had lost his glasses and could not read the contract without them; that McCosh then told him that it was nearly dark and he was in a hurry and to go ahead and sign the paper as it was nothing more than a recommendation; that McCosh again assured him that there was no obligation of any kind entailed by the signing of it, and he would appreciate it if this defendant would recommend him to the plaintiff company; that having known McCosh for several years, and having confidence in him and in what he told him about this recommendation, the defendant signed the paper, and that thus being directed into the signing of the paper by the false and fraudulent statements of McCosh, and because of the deceitful and fraudulent manner in which his signature thereto was procured, and

because of the advantage taken of him when he could not read the paper because of the loss of his glasses, and the haste in getting it signed, and the apparent sincerity of McCosh in making the above representations to him, this defendant denies any liability under the contract sued on.

The plaintiff demurred to all of the answer which related to the execution of the contract, because no valid defense was set out and because none of the allegations showed that McCosh was the agent and representative of the plaintiff, or that the plaintiff had any knowledge of the circumstances under which Oliver signed the contract. The judge overruled this demurrer and the plaintiff excepted pendente lite. The defendant amended his plea by alleging that McCosh "was representing the W. T. Rawleigh Company as agent in said county at that time." The allegation "at that time," in this amendment, when taken in connection with the allegations in the plea to which this amendment applies, means, in the opinion of the majority of this court, at the time McCosh procured the defendant's signature to the alleged contract of guaranty. This plea as amended is therefore to the effect that McCosh, as the agent of the plaintiff, W. T. Rawleigh Company, procured the defendant's signature to the alleged contract sued on. The plaintiff moved orally to strike the answer of this defendant as amended. The judge overruled this motion and the plaintiff excepted pendente lite.

The trial resulted in a verdict for the defendant. The plaintiff introduced evidence tending to show the sale and shipment of the merchandise to McCosh and the indebtedness in the amount sued for. The defendant introduced evidence tending to establish the plea of fraud as amended. Without going into the evidence adduced, in detail, it is sufficient to say that there was no evidence whatsoever tending to show that McCosh, in procuring the signature of the defendant Oliver to the alleged contract of guaranty, was acting as the agent for the plaintiff. Any declaration which McCosh may have made at the time, from which it might be inferred that he was acting as agent for the plaintiff, had no probative value as tending to establish agency, in the absence of direct evidence as to agency. The testimony in the deposition of H. P. Ousley, vice-president of the plaintiff, to the effect that the company delivered contracts of guaranty to their prospective custom-

ers, as McCosh, for the procurement by such customers of the signatures of guarantors or sureties thereto, was insufficient to establish agency on the part of McCosh for the plaintiff in procuring the signature of the defendant. In *Campbell* v. *Murray*, 62 *Ga.* 86 (4), it was held as follows: "A debtor is not the agent of his creditor in procuring security, though the creditor designate the very security required, and furnish to the debtor the instruments of writing which he demands to be executed by third persons as a condition precedent to granting indulgence on the debt." The rule is stated in 60 C. J. 61, as follows: "Fraud practiced by the principal alone upon the surety, without any participation on the part of the creditor or obligee, in inducing the surety to enter into the suretyship contract will not affect the liability of the latter."

While the plea as amended sufficiently set out fraud by McCosh, as the agent of the plaintiff, in procuring the defendant's signature to the contract of guaranty, the evidence, in failing to show that McCosh, when procuring the signature of the defendant, was acting as the agent of the plaintiff, failed to sustain the plea of fraud. The undisputed evidence otherwise demanded a verdict for the plaintiff for the amount of the indebtedness of McCosh to the plaintiff.

The court did not err in overruling the motion to dismiss or strike the plea and answer as amended, but did err in overruling the plaintiff's motion for new trial.

The above opinion is written on rehearing. The judgment of affirmance is vacated, and a judgment of reversal is now rendered.

*Judgment reversed. Felton, J., concurs.*

SUTTON, J. I concur in the ruling of the majority of the court that the evidence failed to show that McCosh was acting as agent of the plaintiff in procuring the signature of the defendant Oliver to the alleged contract of guaranty and in the ruling of the majority that a verdict was demanded in favor of the plaintiff. Also, I think the verdict was demanded for the plaintiff because the defendant failed to show such fraud or emergency in the signing of the contract sued on as would, under the law, relieve him from liability thereon. There was no fiduciary or confidential relationship shown to exist between the parties. According to the undisputed evidence, the only relationship between them was that the defendant, Oliver, had bought patent medicines from McCosh, the

agent of the W. T. Rawleigh Company, who asked him to sign the contract sued on. There was no emergency shown in the signing of the instrument by the defendant that would relieve him from liability. McCosh, the agent of the plaintiff, went by the house of the defendant and asked him to do him a favor, that is, to sign the contract in question, and told him that it was a recommendation to W. T. Rawleigh Company, and that there was no liability or security attached. Oliver testified that he told McCosh that he had lost his glasses and could not read, but he did not even request that the paper be read to him, though there is nothing to show that he could not have had McCosh read the paper to him or could not have had some one else to read it to him. It appears from the evidence without contradiction that the defendant failed to exercise any reasonable care or diligence in the execution of the contract, but just went ahead and signed it on the representations of McCosh that it was a recommendation, and that there was no liability attached to it.

"Where one who can read signs a contract without apprising himself of its contents, otherwise than by accepting representations made by the opposite party, with whom there exists no fiduciary or confidential relation, he can not defend an action based on it, on the ground that it does not contain the contract actually made; unless it should appear that at the time he signed it some such emergency existed as would excuse his failure to read it, or that his failure to read it was brought about by some misleading artifice or device perpetrated by the opposite party, amounting to actual fraud such as would reasonably prevent him from reading it." *Tinsley* v. *Gullett Gin Co.,* 21 *Ga. App.* 512 (94 S. E. 892). In *Lewis* v. *Foy,* 189 *Ga.* 596 (6 S. E. 2d, 788), it was said: "Any misrepresentation, act or artifice, intended to deceive, and which does deceive another, who is reasonably diligent in the use of the facilities at his command, is a fraud that will authorize a rescission of a written contract. It has often been held by this court that a party to a contract who can read must read, or show a legal excuse for not doing so, and that fraud which will relieve a party who can read must be such as prevents him from reading. *Stoddard Manufacturing Co.* v. *Adams,* 122 *Ga.* 802 (50 S. E. 915); *Truitt-Silvey Hat Co.* v. *Callaway,* 130 *Ga.* 637 (2) (61 S. E. 481); *Weaver* v. *Roberson,* 134 *Ga.* 149 (67 S. E. 662); *Baker* v. *Patton,* 144 *Ga.* 502 (87 S. E. 659); *Stokes* v. *Humphries,* 152 *Ga.* 621 (111 S. E.

36); *Green* v. *Johnson,* 153 *Ga.* 738 (113 S. E. 402); *Martin* v. *Turner,* 166 *Ga.* 293 (143 S. E. 239); *Wynn* v. *First National Bank of Newnan,* 176 *Ga.* 218 (2) (167 S. E. 513); *Swofford* v. *First National Building & Loan Association,* 184 *Ga.* 312, 314 (191 S. E. 103)." It was held in the headnote in that case: "The fact that the defendant in the instant case took the deed out of the plaintiff's hands when she undertook to read it will not excuse her for failure to read it, nor does the fact that she did not have her glasses, that they were inaccessible, and that she could not read without them justify her failure to read; nothing being alleged to show an emergency making it necessary that she sign without delay. The defendant's saying he was in a hurry constituted no emergency." It was said in the opinion in that case at page 600: "The Court of Appeals has consistently held that the mere fact that the failure to read the contract was because the party did not have his glasses and could not read without them, without more, would not authorize a rescission of the contract." See also *Mutual Benefit Health &c. Asso.* v. *Marsh,* 62 *Ga. App.* 425, 433-435 (8 S. E. 2d, 117).

I am of the opinion that the demurrer to the defendant's answer as amended should have been sustained and the answer stricken. Nothing is alleged in the answer that shows any artifice, device, or fraud which reasonably could be said to have prevented the defendant Oliver from having the contract read to him and apprising himself of its contents, and nothing is alleged in the answer that shows that McCosh was acting as agent of W. T. Rawleigh Company in procuring the signature of the defendant Oliver to the alleged contract of guaranty. Therefore I dissent from the ruling of the majority of the court that the answer of Oliver as amended set up a defense to the contract sued on.