## 30269.   J. R. WATKINS COMPANY INC. *v.* ELLINGTON
### *et al.*

DECIDED JANUARY 8, 1944.   ADHERED TO ON REHEARING, MARCH 4, 1944.

723

724

*L. E. Heath, McDonald & McDonald,* for plaintiff.
*R. A. Moore, L. L. Forchheimer,* for defendants.

726

GARDNER, J. ■ (*a*) We will first discuss the assignment of error on the exceptions pendente lite. Since the recovery for the merchandise sold after the execution of the contract was for the full amount claimed by the company, so far as the special demurrers are concerned, any error in overruling them was harmless to the movant. (*b*) In passing upon a judgment overruling a special demurrer, this court will look to the whole record to determine whether or not the judgment overruling the special demurrers resulted in harm to the complainant. *Hall* v. *State*, 8 *Ga. App.* 747 (3), 752 (70 S. E. 211). (*c*) So far as the overruling of the general demurrer to the answer of each defendant is concerned, we think that the pleadings as set forth above are sufficient to show that the assignment of error is without merit. (*d*) In passing upon the assignment of error on the overruling of the special grounds of demurrer to the answer of each defendant concerning the item of $493.15, the alleged past-due indebtedness of Ellington to the company existing at the time of the execution of the contract sued on, it might be well to call attention to the provisions of the contract concerning this particular item. It must be kept in mind in this somewhat complicated and lengthy record that the gist of the assignment of error is that the jury found against the company as to this particular item of $493.15, which had already accrued at the time the contract in question was executed. We call particular attention in this connection to paragraphs 8, 9, and 10 of the contract, and the additional provision which Batten signed for his principal, Ellington. These paragraphs and provisions are quoted verbatim in the statement of facts. It may, with little effort, be observed from a casual reading that these paragraphs are of little importance in so far as Ellington's liability is concerned, because Ellington was liable for any existing indebtedness as well as that incurred under the contract in question, whether set out in the contract or not. However, a determination of the liability of Batten, under the pleadings, is not quite so simple. We might state at the outset that in our view, it is immaterial under the whole record, whether Batten's contract is one of suretyship or guaranty. In fact, it is alleged in the petition that at the time Ellington and Batten signed the contract the sum of $493.15 was written into its paragraph 10. This is denied in the answer. In the answers of Ellington and Batten, as amended, it is contended that where

$493.15 appears in paragraph 10, that space was blank at the time the contract was signed. It is further contended that the contract was a form contract, and that $493.15 was written in after the contract was signed by Ellington and Batten and returned to the company at its home office in Winona, Minn. (e) The surety or guaranty contract, admittedly signed by Batten, provided: ". . and the extension of the time of payment of the indebtedness owing by him to said company, as therein provided, we, the undersigned sureties, do hereby waive notice of the acceptance of this agreement, notice of default or nonpayment and waive action required, upon notice, by any statute, against the purchaser; and we jointly, severally and unconditionally promise, agree and guarantee to pay said indebtedness, the amount of which is now written in said agreement, or if not written therein, we hereby authorize the amount of said indebtedness to be written therein." As we construe this contract, we are of the confirmed opinion that Batten bound himself to pay the amount of the indebtedness which Ellington owed the company at the time of the execution of the contract, whether written therein or not. This is the construction placed by the trial court on the contract, and we think that he was right for reasons which we will more fully state. The provision that the company might write the amount into paragraph 10 of the contract is merely permissive and directory; but if any amount was written in, in order to be binding it must have been the correct amount owed by Ellington to the company at the date of the signing of the contract. The issue made by the pleadings and submitted to the jury was whether Ellington owed the $493.15, or any portion thereof; and if Ellington owed it, Batten owed it, under the provisions of the contract. We are not unmindful of the fact that if the $493.15 was written into the contract at the time it was signed, it would be an account stated and preclude the defendants from further denying its correctness under the answers filed. *Turner* v. *Pearson,* 93 *Ga.* 515 (3) (21 S. E. 104). "A party will not be allowed to impeach an account stated, on the ground of fraud or mistake, if he assented to it with full knowledge of the facts and circumstances attending it, or if, with ample means of knowledge at hand, he failed to ascertain the facts." 1 C. J. S. 731, § 51(d). But the answers of the defendants to the allegations of the petition state that the amount was not written into the contract at the time it was signed, and that at the

time of the execution of the contract Ellington owed the company nothing as past-due indebtedness. (*f*) It is further contended, in effect, that since the original answers of the defendants and the amendments are inconsistent, this should have weight in considering the demurrers. It is well settled that a defendant may file inconsistent answers. Code, §§ 81-305, 81-310; *Wheeler* v. *Salinger,* 33 *Ga. App.* 301 (6) (125 S. E. 888). They may be used by the plaintiff as admissions against the defendant. *Wheeler* v. *Salinger,* supra.

It is further contended by the company that the demurrers pointing out that the answers sought to vary the terms of a written contract should have been sustained. We do not think that this contention is tenable for, as already observed, the issue was whether the amount of existing indebtedness was written into paragraph 10 of the contract before, or after the contract was signed. If written in afterwards, it would not vary the terms of the written contract to plead by way of answer that there was no amount in the contract at the time it was signed. The answers serve, under the provisions of this contract, to determine what the contract was when it was signed, and not to vary its terms after it was signed. (*g*) This leads us to a discussion of whether the answers as amended were sufficient to withstand the demurrers because they did not amount to a plea in the nature of non est factum. The amendments were properly sworn to and were sufficient to put in issue whether the $493.15 was written into the contract before or after the date of its execution. If, under the issues of this case as made by the petition and answers, a plea in the nature of non est factum was necessary, we are of the opinion that the amendments were sufficient for that purpose, even though they were not filed at the first term. This court said in *Millen Hotel Co.* v. *First National Bank of Millen,* 20 *Ga. App.* 701 (3) (93 S. E. 253) : "The plea of non est factum may be filed as an amendment to the original plea after the first term, provided there is enough in the original plea to amend by." See *Williams* v. *F. S. Royster Guano Co.,* 67 *Ga. App.* 711 (3) (21 S. E. 2d, 349). In this connection we might call attention to *Howard Piano Co.* v. *Glover,* 7 *Ga. App.* 548 (3) (67 S. E. 277), wherein the court said: "While an unambiguous, valid, written contract is not ordinarily variable by parol testimony, a dispute as to the existence of the contract, including questions as to altera-

tions, is an inquiry in which parol evidence is ordinarily admissible. Parol evidence is admissible to show that a contract has been materially altered since execution." Under this view of the case, we conclude that the court did not err in overruling the demurrers to the answers, both general and special.

■ We come next to consider the special grounds of the motion for a new trial. Some are controlled by what has been said, and by the authorities cited in the first division of this opinion. (*a*) Ground 1 of the amended motion complains that the court erred in admitting, over objection, the testimony of Batten to the effect that the $493.15 was written into the contract after the defendant had signed it. This assignment is governed by what has been said in division 1 of the opinion and the decisions there referred to.

(*b*) Ground 2 complains of the admission of testimony by Batten, over objection of the company, as follows: "I had one conversation with him (meaning Clifford R. Ellington) about the contract before I signed it. He told me he didn't owe anything to the plaintiff whatever; and there is no amount on there at all." The admission of this testimony is assigned as error on the grounds: (1) That it was hearsay; and (2) that there was no plea of non est factum to authorize it. It is undeniably true that what Ellington told Batten was not admissible, but we do not think, under the record, that it was harmful to the company. Much of the testimony was to the effect that Ellington did not owe to the company the alleged existing indebtedness, and the company offered no evidence at all to prove the existence of such a debt except the contract, paragraph 10 of which, as pleaded in the company's petition, indicated the debt to be owing. We might add that the answers denied such a debt and demanded its proof. The testimony to the effect that no amount was written into the contract at the time it was being discussed between Ellington and Batten was admissible, as heretofore pointed out. This ground is without merit.

(*c*) Ground 3 complains of the admission, over objection, of testimony by Ellington, to the effect that at the time the contract was received by him from the company the $493.15 was not written in it. Error is assigned on the ground that this testimony tends to vary the terms of a written contract. This ground is without merit for reasons already discussed in division 1 of the opinion.

(*d*) Ground 4 assigns error because Ellington was permitted to

testify in effect, over objection of the company, that when he presented the contract to Batten, Batten readily agreed to sign it, and upon inquiry of Batten as to how Ellington stood with the company, Ellington informed Batten that he might owe the company a few dollars, but practically nothing; and further to the effect that the $493.15 was written into paragraph 10 of the contract after its execution. For the reasons hereinbefore stated in section (b) of this division of the opinion, there is no merit in ground 4.

(e) Ground 5 assigns error because the court charged as follows: "The defendants contend, gentlemen of the jury, by separate pleadings which they have filed, and amendments to the pleadings, that the $493.15 was not in the contract at the time of its execution, and that they are not indebted to the plaintiff in that amount, and they admit that they bought the amount of $580.10 worth of merchandise, but the defendant Ellington has made payments to the plaintiff in excess of this amount." This charge is assigned as error, because (1) there was no plea to authorize it; and (2) the same tended to alter the terms of a written contract when no plea in the nature of non est factum was filed under oath. This ground is without merit for the reasons given and the authorities cited in discussing the exceptions pendente lite in the first division of this opinion.

(f) Ground 6 assigns error on the following charge of the court: "Gentlemen of the jury, I charge you that the burden is on the plaintiff to prove by a preponderance of the evidence that at the time of the execution of this contract the amount alleged to have been inserted was in there, or that the defendant Ellington was indebted to the plaintiff on that date in this amount, if you find that it was that amount; or if you find by a preponderance of the evidence that no amount was inserted in the contract, then you would go further and find from the evidence what, if anything, Ellington was indebted to the plaintiff on that date, at the date of the execution of the contract; and whatever amount, if any, Ellington was due the plaintiff on the date of the contract, then the defendants would be bound for that amount; and if there wasn't any indebtedness on Ellington's part at the date of the execution of the contract, then they would only be bound for what was subsequently bought, less what was paid, if all of it wasn't paid." As we have heretofore observed, we think that this charge was clear and well

adjusted to the proper construction of the contract. The agreement on the part of Ellington and Batten, as shown by the contract, was in effect to give to the company authority to write into the contract the amount, if any, that Ellington owed at the time of its execution. This was merely directory, and as the court construed the contract, and we think properly so, Batten by his signature bound himself to become liable for whatever amount Ellington owed the company at the time of the execution of the contract. Whether or not this is a general rule, we are not called upon to announce, and do not do so; but under the particular wording of the contract, and the pleadings and the evidence submitted on the issues, we think that it was a correct charge. Certainly it was more favorable to the defendant than if the court had confined the company to proof as to whether the amount was written in the contract at the time of its execution. The company was given the benefit of a right to recover any amount that Ellington owed at the time of the execution of the contract, and we fail to see any resulting injury therefrom to the company. The error assigned on this charge is: (1) That there was no pleading to authorize it—we have hereinbefore dealt with this question; (2) that there was no issue as to whether the contract had been altered or changed—we have likewise hereinbefore dealt with this question; (3) that there was no sworn plea in the nature of non est factum under oath—in dealing with the pleadings, we have likewise dealt with this question; (4) that there was no issue under the pleadings that the $493.15 had been inserted in the contract since it was signed by the defendant—we have likewise disposed of this question. There is no merit in this ground.

(*g*) Exception is taken to the failure of the court to charge, without a written request, the following: "Gentlemen of the jury, the defendants have neither filed a plea of non est factum or in the nature of a plea of non est factum as to the contract sued on under oath, and therefore I charge you that you will find the amount that was due at the execution of the contract was $493.15." The failure to charge this principle is assigned as error, (1) because it was raised by the pleadings; (2) because there was no plea in the nature of a non est factum; and (3) because the court nowhere instructed the jury that when a contract is sued on, in order for the defendant to show that it has been altered, there must be filed a plea under

oath in the nature of a plea of non est factum; there was no plea of non est factum filed under oath; there was no issue made by the answers of the defendants that they did not sign the contract for the reason that they filed no plea in the nature of a plea of non est factum. In view of what we have hereinbefore said as to the exceptions pendente lite, this ground is without merit.

■ As to the general grounds, while the evidence is conflicting on the material issue whether or not Ellington owed the company anything at the time the contract was executed, we can not say as a matter of law that there was no evidence to sustain the verdict regarding the $493.15. Ellington, Batten, and a witness Minchew testified positively that there was no amount written in paragraph 10 of the contract before it was signed by the defendants. The testimony for the company was equally as positive that the amount was written in before the defendants signed it. There was no other proof submitted by the company that would demand a finding that Ellington owed the company any amount at the time of the execution of the contract. It is true that Ellington in his testimony admitted that he might have owed ten or fifteen dollars. As to this, it must be kept in mind that Ellington claimed to have overpaid his account for merchandise received after the execution of the contract. Since the jury returned a verdict for the company for the amount claimed for goods purchased after the execution of the contract, the jury could have believed that the company had received this ten or fifteen dollars which Ellington stated he might have owed. Construing the evidence most strongly to sustain the verdict, as it is our duty to do, we feel that this is a fair inference from all of the evidence. We think that the evidence authorized the verdict. Since it has the approval of the trial court, we are without authority to disturb it.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

### ON REHEARING.

GARDNER, J. It is contended in the motion for rehearing that the court overlooked certain documentary evidence, and certain testimony in connection therewith. The documentary evidence referred to consists of two letters, one dated March 2, 1938, written by the company (accompanying the contract in controversy) to Ellington, appearing in the record as follows: "We enclose herewith your new contract expiring April 1st, 1939, properly filled out

by us. When executing this contract, sign it yourself in ink, and obtain the signatures (in ink) of two or more satisfactory sureties. Then sign the locality sheet and fill out and sign the dealer's property statement. The property statement on sureties is to be. used as shown on the statement itself. Please also give us the names and addresses of reliable references, on the reference blank enclosed, who are well acquainted with your sureties. As you will note, we have inserted in the contract the amount of your indebtedness to us as of March 2nd, 1938, namely four hundred ninety-three and 15/100 dollars, which amount is also inserted in the statement at the bottom of this sheet. Carefully compare the amount in both places with your books, and if found correct, kindly sign the statement below (in ink) and return this entire sheet with your contract after you have properly executed the same. Please attend to both of these important matters at the earliest possible moment. [Signed:] Very respectfully, The J. R. Watkins Company, H. I. Greene." The other letter, dated May 9, 1938, written by Ellington to the company and accompanying the contract after it had been signed by the defendants, is as follows: "The J. R. Watkins Company, Winona, Minn., U.S.A. Dear Sirs: I have received the contract dated March 2nd, 1938, and have executed it and I am returning it herewith. When received this contract showed, and now shows, the amount of indebtedness due from me to the J. R. Watkins Company as of March 2nd, 1938, for goods and other articles it sold and delivered to me, as vendee, at Winona, Minn., and other regular places of shipment, to be four hundred ninety-three and 15/100 dollars, which I have carefully verified by my books and hereby acknowledge to be correct. Name: C. R. Ellington. Post Office: Douglas, Georgia." It is contended that the letter from Ellington to the company estops Ellington from denying that he owed the company the sum of $493.15, or that this amount was not, at the time, written into the contract. We are cited to the parol testimony of an officer-witness of the company to the effect that the contract accompanied the letter first above mentioned; that the contract had written in it the amount of the pre-existing indebtedness at the time it was mailed to Ellington, on March 2, 1938; and that on May 9, 1938, the company received a letter returning the contract signed by the defendants. Our attention is further called to a portion of the testimony of Ellington regarding his letter of May 9,

1938, to the company, written when he returned the contract to the company. The testimony referred to by counsel for the company was as follows: "That letter (indicating) of May 9, 1938, is my handwriting. That is my signature so far as I went. My eyes are bad, and I don't want to say that I signed them or run over one. I don't want to deny anything, understand. I couldn't tell you if that contract was signed and mailed to the company prior to May 9, 1938. That letter contains the truth so far as I know. Of course, it was mailed to me, but as I told you, I didn't remember. I mailed that contract in on May 9. I might have mailed the contract and letter together. I couldn't say. I can't tell by reading that letter. I said, 'I have mailed my contract to Winona, to-day.' That letter is absolutely the truth. I suppose I didn't mail it until May 9, by that." The other testimony of Ellington with reference to the letter was as follows: "That is my signature on the bottom of the letter that is marked exhibit 3 [letter of May 9, 1938]. There is something else I want to explain about this. There was no such item filled in then, and you see it is a different colored ink and a different typewriter. It is my signature. I couldn't say whether the statement 'which I have carefully verified by my books and hereby acknowledge to be correct' was in there when I signed it or not. I know there wasn't any amounts written in here when I signed it. Colonel, my signature is there, but I don't know how to explain it. It has got different colored ink there, but I wouldn't have signed that with $490 in there. They have so many forms that you can't keep up with all them. My name is different up there (indicating). I couldn't say whether my name and address on that letter and the date of that letter is not the same handwriting that the writing in here, to wit: '493.15;' the same typewriting; same kind of ribbon. It is my signature, but I never say anything like this in the ones I signed. That is my signature. I don't deny that." We have set forth the foregoing, in order that the witness's entire testimony concerning the letter of May 9, 1938, may be considered, rather than a portion of such evidence. Thus it will be seen that while Ellington did not deny his signature, he did deny that the sum of $493.15 was written in the letter at the time he signed it, and indicated that it was a form letter. This testimony of Ellington, together with the positive testimony of the witness Minchew, and with that of Batten, was clearly sufficient, in our

opinion, to carry to the jury the issue whether or not the amount was written in the contract before or after it was signed, and the jury resolved the issue against the company. So far as the evidence goes, practically the entire testimony revolved around this issue, and the court, in the original opinion, had this view in mind. When we used the statement, "There was no other proof submitted by the company that would demand a finding that Ellington owed the company any amount at the time of the execution of the contract," as set out in paragraph 4 of the motion for rehearing, quoting from division 3 of the original opinion, we had further in mind that the company submitted no further evidence establishing the existence of a pre-existing indebtedness, such as statements for merchandise shipped by the company to the defendant Ellington, and remittances therefor (if any) prior to the execution of the contract.

We have carefully reviewed the original opinion in the light of the motion for rehearing, and are still of the opinion that the court did not err, for any of the reasons urged, in denying the motion for new trial.

*Original opinion adhered to. Broyles, C. J., and MacIntyre, J., concur.*