30898, 30899.   J. R. WATKINS COMPANY *v.* BREWER *et al.;*
and *vice versa.*

DECIDED NOVEMBER 27, 1945.   REHEARING DENIED DECEMBER 19, 1945.

*Ellis & Ellis, R. L. Maynard,* for plaintiff in error.
*Dykes & Dykes,* contra.

SUTTON, P. J. (After stating the foregoing facts.) ■ It is contended by the defendants in error in paragraphs 1 and 5 of the cross-bill that the court erred in overruling the demurrers to the petition, on the ground that the suit was based on three separate and distinct causes of action and was multifarious.

This suit was brought to recover $699.93, and interest thereon from November 16, 1937; the principal sum being made up of $634.80, which was set out in paragraph 10 of the contract of December 24, 1936, and which is an account stated as of the date of that contract (*J. R. Watkins Co.* v. *Ellington,* 70 *Ga. App.* 722, 727, 29 S. E. 2d, 300), and an additional item of $65.13, this being a balance alleged to be due for goods sold under said contract. It is true that a statement showing this $65.13 balance was attached to the petition as exhibit 4, but the petition shows that the goods were sold under and by virtue of said 1936 contract. The contract of December 24, 1935, was also attached to the petition, but the amount of indebtedness stated therein, $504.30, and the additional indebtedness due under that contract, $130.50, were brought forward and renewed in the contract of December 24, 1936, and the two amounts just mentioned make up the $634.80 written into the December 24, 1936 contract. All of the defendants signed the contract of December 24, 1936, and thereby jointly and severally obligated themselves to pay the amount written in the contract,

■

and in addition thereto to pay for goods and merchandise sold by the plaintiff to George D. Halstead until the expiration or termination of the contract. The amount of the liability of said parties under this contract was limited to $700 by the additional agreement entered into by them on April 23, 1937, which is attached to the petition as exhibit 3. The action, as we construe it, was based on the contract of December 24, 1936, and the petition was not subject to demurrer on the ground that it was based on three separate and distinct causes of action and is multifarious.

■ Error is assigned by the defendants, in paragraphs 2 and 3 of the cross-bill of exceptions, on the order of the court overruling paragraphs 4 and 5 of their demurrer to the petition, on the ground that the action was barred by the statute of limitations. The contract of December 24, 1936, was terminated on November 16, 1937, and the indebtedness therein stated and the indebtedness authorized to be incurred thereby for the sale of additional merchandise by the plaintiff to the principal defendant became due and payable when the contract was terminated. This was a simple contract in writing, not under seal, and the action thereon would not become barred until six years after the termination of the contract. Code, § 3-705, provides: "All actions upon promissory notes, bills of exchange, or other simple contracts in writing shall be brought within six years after the same shall have become due and payable." The present suit was brought on November 10, 1943, which was within the six-year period from the termination of the contract, and, consequently, the petition was not subject to the demurrer that the action was barred by the statute of limitations.

■ The ruling made in No. 2 above also applies to the item of $65.13, which was the balance due for merchandise sold and furnished by the plaintiff to George D. Halstead under the contract and before its termination, and which amount the defendants were obligated to pay under the terms of said contract. This ruling relates to paragraph 4 of the cross-bill, which assigns error on the overruling of paragraph 6 of the demurrer to the petition.

■ It is contended in paragraph 6 of the cross-bill that the petition shows that S. B. Halstead, one of the sureties on the contract, was dead and there was no representative of his estate; it being further contended that the burden was on the plaintiff to see that a representative was appointed and made a party to the suit, and

failure of the plaintiff to do this rendered the petition subject to demurrer on account of a nonjoinder of parties defendant. The contract declared upon was a joint and several obligation, and the holder thereof was authorized to sue the obligors jointly and severally. *Johnson* v. *Georgia Fertilizer &c. Co.*, 21 *Ga. App.* 530 (3) (94 S. E. 850); *Barnett* v. *Ferris*, 39 *Ga. App.* 206 (146 S. E. 345); *Hartsfield Co.* v. *Whitfield*, 71 *Ga. App.* 257 (30 S. E. 2d, 648); *Thomasson* v. *Farmers & Merchants National Bank*, 170 *Ga.* 555 (153 S. E. 419). The petition was not subject to demurrer on the ground of a nonjoinder of parties.

■ Paragraph 7 of the cross-bill assigns error on the overruling of paragraphs 9, 10, 11, 12, and 13 of the special demurrer. These special demurrers were entirely without merit, and the court did not err in overruling them.

■ We now come to the assignments of error in the cross-bill complaining of the sustaining of the demurrers to paragraphs 10 to 18 inclusive of the defendants' answer.

(a) Paragraphs 10 and 11 of the answer alleging that the contract of December 24, 1936, was fraudulently procured, in that the agent of the plaintiff company went to Ellaville, Schley County, and solicited the two surety defendants to sign the contract, pointing out to them that it would not expire until April 1, 1938, and that George D. Halstead was doing a good business, and the agent of the company assured them that, if they would sign the contract with him, the agent said he felt quite sure that Halstead would have no trouble in collecting enough to pay the amount in full before the expiration of the contract, and he further promised them that, if they would sign the contract, the account of Halstead thereunder should never exceed $700, and that he would send them statements frequently, showing the condition of Halstead's account with the company—failed to set out any valid defense, and the court did not err in sustaining the demurrer thereto. The case of *W. T. Rawleigh Co.* v. *Oliver*, 67 *Ga. App.* 748 (21 S. E. 2d, 490), relied on by the defendants in error to support this contention, is distinguishable on its facts from the case at bar and does not authorize or require a ruling in the present case different from the one now being made on this question.

■ The allegations in paragraph 12 of the answer—to the effect that the plaintiff, after the contract was signed, urged George

D. Halstead to sell goods to customers on a credit—do not show a breach of the contract or increase the risk of the sureties so as to release them from liability under the contract, and the court did not err in sustaining the demurrer to the same.

■ The allegations contained in paragraphs 13 and 14 of the answer—to the effect that the signing of the account, dated May 23, 1938, by George D. Halstead, constituted a material change in the contract of December 24, 1936, so as to release the defendants from liability under said contract—amounted to no valid defense to the present suit, and the court did not err in striking the same on demurrer.

■ The contract sued on was joint and several, and the fact that one of the sureties to the contract had died and his personal representative was not made a party to the present suit would not release the other two sureties. Consequently, the court did not err in sustaining the demurrer to paragraph 15 of the answer. In support of this ruling, see the authorities cited in division 4 above.

■ It follows that the court did not err in overruling the defendants' demurrers to the petition and in sustaining the demurrers to paragraphs 10 to 18 inclusive of the defendants' answer.

■ We will now deal with the main bill of exceptions. The plaintiff in error excepts to the overruling of its motion for a new trial, and contends that the court erred in directing a verdict in favor of the sureties. The plaintiff introduced in evidence: the contract of December 24, 1936, and the written agreement signed by all of the parties, modifying this contract and limiting the liability of the sureties thereunder to an amount not exceeding $700; the statement of account, dated May 23, 1938, signed by G. D. Halstead, showing the total amount of charges for merchandise since the date of the contract of December 24, 1936, as $193.16, and the total credits thereon amounting to $128.03, leaving a balance of $65.13, which, added to the $634.80, the amount written in the contract, made $699.93, the amount for which the suit was brought; and the reports made by G. D. Halstead to the plaintiff showing the sales, collections, and amounts remitted to the plaintiff.

The case was in default as to the principal debtor. The answer of the sureties amount to a denial of any indebtedness on their part to the plaintiff. They admitted in their answer that they signed

the contract, and alleged that it was signed by them as sureties; but they introduced no evidence. G. D. Halstead, the principal, was introduced as a witness by the plaintiff. He testified, among other things: "I have no way of telling whether or not I have paid anything on the amount that I owe Watkins & Company named in that contract, the balance of $634.80; the money I sent in was to be given credit for it, and I did not know whether it would be credited on that or the goods I was selling or what; I probably did not send in as much as I bought because I put a lot of the stuff out into sales like they insisted that I do; I signed that [referring to the contract]. . . I did not complain about the correctness of their account with me; I can not say how much my account increased between December 24, the date of that contract, and April 1; according to their figures it had increased; I did not keep books; I have not much education; I don't know whether or not I owed them more on April 1, 1937, than I did on December 24, 1936; I don't remember that far back; it was six or seven years." The witness then testified that he had made payments on the account from $10 up to $50, and that he had made reports showing the money that he sent to the company; and he identified the reports that were introduced in evidence by the plaintiff, and said that those were the reports to which he was referring, but he did not know whether they constituted all of the reports that he sent in. He further testified that he did not know what amount he owed the Watkins Company, that he had no way of knowing.

The contract sued on is one of suretyship. *Watkins Medical Co.* v. *Marbach,* 20 *Ga. App.* 691 (93 S. E. 270). The obligation of a surety is accessory to that of the principal, and the balance due on a contract of suretyship will determine the amount due by the surety thereon. *Gartrell* v. *Johns,* 15 *Ga. App.* 671 (2) (84 S. E. 175). When the sureties entered into and signed the contract of December 24, 1936, they not only obligated themselves to pay the amount then acknowledged to be due and written in the contract, but they also promised and obligated themselves to pay for the goods and merchandise sold and delivered by the plaintiff to G. D. Halstead until the expiration or termination of the contract. The amount written in the contract at the time it was signed by the defendants was an account stated. "An account

stated is an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions, and promising payment." *Ward* v. *Stewart,* 103 *Ga.* 260, 262 (3) (29 S. E. 872); *Moore* v. *Hendrix,* 144 *Ga.* 646 (87 S. E. 915); *Borders* v. *Gay,* 6 *Ga. App.* 734 (65 S. E. 788). Bouvier defines an account stated as "An agreed balance of accounts. An account which has been examined and accepted by the parties." "An account stated establishes the creditor's claim and entitles him to bring an action on it as a liquidated demand; and in the absence of fraud or mistake an account stated is conclusive upon the parties." *Phillips* v. *Ableson,* 60 *Ga. App.* 558, 559 (4 S. E. 2d, 411). "A party will not be allowed to impeach an account stated, on the ground of fraud or mistake, if he assented to it with full knowledge of the facts and circumstances attending it, or if, with ample means of knowledge at hand, he failed to ascertain the facts." 1 C. J. S. 731, § 51 (d).

There was no pleading or evidence that any payments had been made reducing the amount expressed in the contract. Under the pleadings and the evidence, the plaintiff was entitled to a directed verdict against the sureties for $634.80. And if the principal debtor admitted in writing that he was due the additional sum of $65.13, which the plaintiff contends he did, as shown by the account attached to the petition and introduced in evidence, then the sureties would also be liable for this amount, under the terms of the contract and the applicable principles of law above stated. D. B. Halstead testified that he signed this statement of the account, but said, "If that language 'the above account is correct— I owe the J. R. Watkins Company $699.93' was up there when I signed it, it wasn't visible because I did not see it." He did not deny that the statement of the account which he had signed was correct, but said that he did not know what amount he owed the plaintiff. The plaintiff contends that the credits shown by the reports signed by Halstead and introduced in evidence are identical in date and amount with those shown in the statement of the account signed by Halstead. The burden was on the plaintiff to make out its case. Under the pleadings and the evidence, the plaintiff was entitled to a directed verdict against all of the defendants for $634.80, this being the amount written in the contract when it was signed by the defendants. The issue as to the balance

due for merchandise sold and delivered by the plaintiff to the defendant Halstead, after the contract was signed and before its termination, should have been submitted to the jury to pass on.

In paragraph 8 of the contract sued on, it was provided that "either of the parties hereto may terminate this agreement at any time, if desired, by giving the other party notice thereof in writing by mail." It is contended by counsel for the defendants in error that, where a person who has the right to terminate a contract and elects to do so, as the plaintiff in this case did, he can not partially terminate it, but must terminate it in toto and cannot thereafter assert the contract or any part of it for any purpose. This contention can not be sustained here, and the authorities cited and relied on by counsel for the defendants in error (13 C. J. 608, § 639, and *McMillen* v. *Benfield,* 159 *Ga.* 457 (4), 126 S. E. 246) to support this contention are not applicable under the facts of the present case. But the following principle of law in this respect is applicable here: "Where under the contract a party may terminate it at his option, he is not liable after termination for further transactions thereunder, but obligations which have already accrued are not affected. Stipulations in the contract as to the rights of the parties on termination will ordinarily be enforced according to their terms." 13 C. J. 608, § 640; 17 C. J. S. 893, § 404. The plaintiff was entitled to enforce its rights under the contract against the defendants after its termination on November 16, 1937, in the same manner as it could have done had the contract expired under its terms on April 1, 1938.

The court erred in directing a verdict in favor of the two sureties, and in overruling the plaintiff's motion for a new trial.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. Felton and Parker, JJ., concur.*