40889.   WILKINSON v. WALKER.

DECIDED SEPTEMBER 23, 1964.

*Sell & Comer, E. S. Sell, Jr.*, for plaintiff in error.
*Adams, O'Neal, Steele, Thornton & Hemingway, H. T. O'Neal, Jr., George L. Jackson*, contra.

RUSSELL, Judge. 1. Paragraph 6 of the contract in question stated: "Either party shall have the right to require a three months advance notice from the other party in writing before terminating this agreement." The defendant contends that the division of the money in the registry of the court cannot be considered as money paid out "upon the termination of this agreement or the liquidation of the business" because the defendant notified the plaintiff on July 1, 1963, that he was dissolving the arrangement created by the contract; this would set a termination date of October 1, 1963, or later, but the money was actually paid in to the registry of the court on September 30, which he contends is prior to the termination of the agreement. The sum should therefore not be considered as "moneys left" after payment of outstanding obligations and return of the money advanced to the partnership by the plaintiff under paragraph 13, but rather as monthly income for September under paragraphs 5 and 14. This position is completely untenable. The notice provision was no more than a contract stipulation, which may always be waived by the parties by mutual consent. *Bearden Mercantile Co. v. Madison Oil Co.*, 128 Ga. 695 (4) (58 SE 200). Both parties consented to the interlocutory order of September 27, 1963, which provided that the purchase by the plaintiff of the defendant's interest in the business should be "consummated by payment of the purchase price into the registry of the court on September 30, 1963" and that upon payment of said sum the defendant should vacate the premises. The money was in fact paid in to the court on September 30. This marked the complete termination of the agreement by purchase as of that date in accordance with the terms of the consent order. It is therefore obvious that the defendant, who gave the original notice to terminate, did not insist on October 1, as the termination date.

2. Paragraph 13 is complete and unambiguous as to the allocation of proceeds representing the value of the business upon termination of the contract. With the simplicity and forthrightness of a will, it deals with the estate upon the demise of the partnership. First, the just debts of the firm are to be paid. Second, the plaintiff is to receive back, penny for penny, exactly

what he put into the partnership. Third, as a sort of residuary clause "any moneys left shall be divided 20% to the second party and 80% to the first party." We are not concerned with whether or not the "moneys left" represent capital gain, income, profit, or some other form of surplus. The stipulation is all inclusive. " 'Stipulations in the contract as to the rights of the parties on termination will ordinarily be enforced according to their terms.' " *J. R. Watkins Co. v. Brewer,* 73 Ga. App. 331, 343 (36 SE2d 442). Only paragraph 13 deals with distribution upon termination, and its provisions are mandatory. It may well be observed, however, that this conclusion is strengthened by an examination of the contract as a whole. Paragraph 9 specifies that profits shall be distributed not less than 30 days from the date of remittance. Paragraph 14 provides for future modification of the distribution of profits, treating them as continuing earnings of a going business. The supplementary contract of March 26, 1955, specifically states that it is pursuant to the intention of the parties as expressed in paragraph 9 of the original agreement, provides that the division of net profits shall be made monthly, and then states that this supplements the net profits division stated in paragraphs 5 and 14. Paragraph 5 defines expenses, and indicates that the profits to be divided represent the sum remaining after deduction of expenses and losses. Thus, the "profits" of the going concern are the monthly cash receipts less losses and listed operating expenses, and are subject to a 60%—40% division between the partners, while the surplus to be divided on termination of the partnership is subject to a different formula—the balance after repayment of all legal obligations and reimbursement of the plaintiff's investment—and it is to be prorated by an 80%-20% division. Paragraph 13 refers to one set of facts, paragraphs 5, 9 and 14 to another; they are in no way related to each other. Furthermore, the defendant acceded in principle to the proposition that he was dealing with a termination situation when he consented to the interlocutory order, one provision of which was that he acknowledged the plaintiff to be entitled to a return of his total capital investment in the business. This is of course not applicable to a situation involving distribution of net profits. The trial court did not err in finding that

the plaintiff was entitled to 80% of the surplus remaining after payment of the partnership obligations and repayment of the sums advanced by him to the partnership.

*Judgment affirmed. Nichols, P. J., and Hall, J., concur.*